[No. 28276.   Department One.   March 28, 1941.]

*In the Matter of the Eligibility of the Persons Employed at the* DEEP RIVER TIMBER COMPANY.[1]

*The Attorney General* and *Lyle L. Iversen, Assistant* (*Lawrence W. Thayer,* of counsel), for appellant.

*James J. Molthan,* for respondents.

MAIN, J.—This is an appeal from a decree of the superior court of Wahkiakum county, by the commissioner of unemployment compensation and placement, which ordered payment of benefits to certain claimants whom the commissioner had determined were dis-

[1]Reported in 111 P. (2d) 575.

qualified by reason of their connection with a labor dispute. The facts, as stated in the appellant's brief, are admitted by the respondents to be correct, except in two particulars which will be subsequently referred to in this opinion. We shall, therefore, in making a statement, closely follow the statement made in that brief.

The Deep River Timber Company, hereinafter called the company, is engaged in logging operations, including the transportation and booming of logs on the upper Naselle river, in Wahkiakum county. As a result of an election held by the National Labor Relations Board in January or February, 1939, the sawmill and timber workers' union, affiliated with the American Federation of Labor, hereinafter referred to as the A. F. of L., was certified to the company as the bargaining agency for the employees. A number of the employees were members of the International Woodworkers of America, affiliated with the Congress of Industrial Organization, which will be referred to as the C. I. O. The members of both organizations were intermingled in the services being performed for the company, and there was no distinction between the members of the respective unions as to the grades and classes.

Sometime prior to August, 1939, one Bert Clark, a loading donkey engineer, who was a member of the C. I. O., was employed by the company. The representatives of the A. F. of L. endeavored to persuade Clark to become a member of their union. Upon his refusal to join that union, the A. F. of L. notified the company that he must be discharged or a strike would be called. Thereafter, and on August 11, 1939, the company discharged Clark. As a result of this discharge, the C. I. O. called a strike on August 12, 1939, for the purpose of protecting Clark and forcing

his reinstatement. The status of the employees for the period of unemployment during this strike is not, however, involved in this appeal.

The company agreed with the C. I. O. to reemploy Clark, and normal operations were resumed and continued throughout the month of September. Clark was reinstated October 2, 1939. The stoppage of the work of the company, for the duration of which the respondents herein seek benefits under the unemployment compensation act, commenced on that day, and continued until the 23rd day of that month.

October 2nd, when the respondents reported for work, they found a majority of the employees congregated about the company's office. A strike had been called by the A. F. of L., for the reason that they refused to work with Clark, and the representative of the company informed the respondents that there were not enough men to operate. A few days later, the company was picketed by placing a sign near its office. The difficulties were adjusted, and all employees returned to work October 23, 1939. After being unable to go to work, the respondents filed claims for unemployment compensation, which were denied upon the ground that their unemployment was due to the labor dispute.

The initial determination of the division of unemployment compensation holding the respondents ineligible was appealed, and the appeal was heard by an appeal examiner, who made findings of fact and concluded that the previous determination should be affirmed. Thereafter, the respondents petitioned the commissioner to review the decision of the appeal tribunal, and, later, that officer sustained the appeal examiner's findings and conclusions. From the order of the commissioner, an appeal was taken to the superior court, resulting in reversing the order of the

commissioner and holding that the unemployment of the respondents did not result from the stoppage of work caused by a labor dispute. From the decree of the superior court, the commissioner of unemployment compensation and placement prosecuted this appeal.

It was conceded upon the trial in the superior court that the commissioner erred in denying benefits to four of the claimants. The appeal did not cover that part of the decree which sustained the right of these. four men to compensation.

In the recent case of *In re St. Paul & Tacoma Lumber Co.*, 7 Wn. (2d) 580, 110 P. (2d) 877, the law, as declared, supports all of the contentions of the appellant upon this appeal, except one, and the law there stated disapproves of all of the contentions here made by the respondents, except one. The one question which is not covered in that opinion, which is involved here, is whether there was a labor dispute which caused the closing of the company's plant, and whether the respondents participated, or were directly interested, in that dispute; and further, whether they were of the same grade or class of workers as the other employees of the company.

Section 5 of chapter 162 of the Laws of 1937, p. 580, entitled "Unemployment Compensation Act," provides:

"An individual shall be disqualified for benefits: . . .

"(e) For any week with respect to which the director finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed: *Provided,* That this subsection shall not apply if it is shown to the satisfaction of the director that:

"(1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and

"(2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute: . . ."

This section was amended by § 3 of chapter 214 of the Laws of 1939, p. 823 (Rem. Rev. Stat. (Sup.), § 9998-105 [P. C. § 6233-305]), but not as to the portion above quoted.

It will be noted that § 5 of the Laws of 1937 first provides that an individual employee shall be disqualified for benefits if the commissioner finds that his total or partial unemployment was due to stoppage of work because of a labor dispute. Following this is a proviso that this subsection shall not apply if it is shown to the satisfaction of the commissioner that the employee was not "participating," or "directly interested," in the labor dispute which caused the stoppage of the work; and further, if it appears that he does not belong to a grade or class of workers to which the other employees who called the strike belong. The appeal examiner found that:

"The stoppage of work existed because the members of the A. F. of L., Local 2615, refused to work with Bert Clark. The members of the C. I. O., Local 11, were equally determined that Clark should be permitted to work if he wanted to."

The respondents, however, say that there is no substantial evidence to sustain this finding, and that they were not participating, or directly interested, in the labor dispute. During the hearing before the appeal examiner, one of the respondents testified:

"Q. What in your opinion caused the stoppage of work between October 2 and October 16 [23]? A. The A. F. of L. refused to work with this Bert Clark. That is the only reason for the stoppage of work. Q. Was

your organization interested in seeing that Clark continued to work there if he wanted to? A. We were . . . Q. Your position had not changed in that respect, had it, between October 2 and October 16? A. Not to change the man's affiliation. If he wanted to belong to us, we would see that he was protected. Q. That is what I mean, that if he was not replaced, why you still were in the same position, that you were going to insist that he should be given the opportunity to work if he wanted to? A. Yes."

It thus appears that there is substantial evidence that the respondents were participating, and directly interested, in the labor dispute. Further than this, there is direct evidence that the members of the C. I. O. did the same grade or class of work as did the A. F. of L. workers.

Reference will now be made to the contention of the respondents that a labor dispute did not exist. From what has been hereinbefore said, it appears that the C. I. O., in August, had called a strike because Clark was discharged, and that, in October, the A. F. of L. called a strike because he was reemployed, and at that time, as the evidence shows and the examiner found, the respondents were equally determined that Clark should be permitted to work if he wanted to. There can be no question but that a labor dispute existed.

We have now covered the particulars in which the respondents say that the statement of the appellant is incorrect, and our view is that the position of the respondents in this respect cannot be sustained.

The case of *Bloedel Donovan Lumber Mills v. International Woodworkers*, 4 Wn. (2d) 62, 102 P. (2d) 270, bears no analogy to the case that we are now considering. The facts in the two cases are entirely different.

That portion of the decree appealed from will be reversed and the cause remanded, with direction to

the superior court to affirm the determination of the commissioner of unemployment compensation and placement, except as to the claimants who are not involved in this appeal.

ROBINSON, C. J., BLAKE, STEINERT, and DRIVER, JJ., concur.