BOARD OF REVIEW OF W. VA. DEPT. OF UNEMPLOYMENT COMPENSATION et al. v. M. H. HIX, Clerk Circuit Court of Kanawha County et al.

(No. 9526)

Submitted February 8, 1944. Decided February 29, 1944.

LOVINS, JUDGE, dissenting.

*Leo Loeb,* for petitioners.

*Ritchie, Hill & Thomas* and *John H. Thomas,* for respondents.

KENNA, JUDGE:

Ninety-four of the employees of Wallace Corporation at its plant in Richwood, where it is engaged in the manufacture of clothespins and wooden dishes, were refused unemployment compensation by the Commissioner and by a trial examiner of the Unemployment Compensation Department. That finding was affirmed by the Board of Review. Upon appeal to the Circuit Court of Kanawha County, the ruling of the Board of Review was, set aside and an order entered awarding compensation. Upon the application of the Board of Review this appeal was granted.

The circumstances out of which the controversy arose so far as they affect the legal questions arising on this appeal are not controverted and may be stated as follows:

In September, 1941, a strike was ordered by certain employees of Wallace Corporation in its Richwood plant

who were members of the Congress of Industrial Organizations in order to compel the recognition of that organization as the bargaining agency for all of the company's workmen. All of the persons employed at the Richwood plant did not then belong to the CIO union and the strike was not based upon a disagreement between the employer and the men called out concerning working conditions, wages or hours. The plant was picketed and from the testimony it appears that the workmen who were not members of the CIO and who wished to continue work were prevented from entering the plant by threatened violence. The exact time does not appear, but near the middle of October a number of the workmen who were not members of the CIO union and who were not striking, procured a charter from the Secretary of State authorizing the organization by them of the Richwood Clothespin and Dishworkers' Union. That union did not call a strike. The strike lasted until January 13, 1942, when operations at the plant were resumed, the strike having resulted in a complete suspension of work.

As we understand the record, the findings of the trial examiner and of the Board of Review were to the effect that within the meaning of Chapter 21A of the Code a strike which caused a suspension of work which in turn created the unemployment upon which these claims are based, was a labor dispute within the terms of the chapter to which reference is had; that claimants had not participated directly or indirectly in causing the strike to occur or in supporting it during its continuance, but that, the unemployment having been the direct result of a labor dispute the claimants had failed as is required by Code, 21A-6-4 (4), to show that they did not belong to the grade or class of workers who were participating, financing, or directly interested in the labor dispute which resulted in the stoppage of work.

The employer did not appear at the hearing and took no position concerning the decision of the controverted question. It is admitted that the strike was not brought

about by any difference between the Wallace Corporation and its employees.

It is quite apparent that the first question to be determined is whether the strike at the plant of the Wallace Corporation in Richwood was a labor dispute. If we are of the opinion that the trial examiner and Board of Review were correct in their conclusion that it was, we then reach the question of whether it was the duty of the applicants for unemployment compensation to show, as a part of their case, that they did not belong to the grade or class of workers engaged in striking, or whether that is matter which should be set up and shown by those resisting the award of unemployment compensation. In other words, was that question an element of the cases of the claimants to be shown by them, or was it matter of defense to be shown either by the employer or by the Unemployment Compensation Department.

We think there is no question but that the purpose of our unemployment compensation statute is to partially insure those satisfactorily employed who wish to continue earning their living, against unemployment arising from any cause except those expressly enumerated in Code, 21A-6-4, and to remove from the minds of those willing, able and anxious to work the constant dread, through no fault of their own, of being deprived of employment. It is quite plain that is was not its purpose to award compensation to those who either individually, or as a member of a class, willfully contributed to the cause of their own unemployment. We believe it is equally clear that a fair reading of the act shows beyond peradventure that its purpose was to include, as far as practicable, all those who were involuntarily and temporarily out of work.

The first class, which Code, 21A-6-4, excludes from receiving benefits, allotted by the week, are those who left work voluntarily without good cause involving fault on the part of the employer. Following that provision, after two other exclusions with which we are not here con-

cerned, those next disqualified are those whose unemployment is due to a stoppage of work existing because of a labor dispute at the factory where they were employed. We believe that is it comparatively clear from a reading of the whole chapter that the legislative purpose was not to include in the term "labor disputes", controversies which might arise among the men themselves or what might be termed internal disagreements. To say that the statute contemplates treating interwoven and intra-labor union controversies, which frequently do cause a stoppage of work, as a labor dispute that would disqualify all employees working in the same grade or class as the participants, strikes us as not within the spirit or the wording of the act. Of course the first sub-section disqualifies participants for the week in which they voluntarily cease work and the six following weeks, and we believe that that provision would include those who stop work because of jurisdictional disputes between hostile unions. We do not believe that it follows from that line of reasoning, however, that disputes other than those that arise between the employer and his workmen are labor disputes within the meaning of the act in question. *Miners v. Hix,* 123 W. Va. 637, 17 S. E. 2d 810.

*Affirmed.*

Lovins, Judge, dissenting:

I respectfully dissent from the conclusion reached in the majority opinion.

Initially this proceeding presented three questions: (1) Was the stoppage of work caused by a labor dispute at the establishment of claimants' employer; (2) were the claimants participating, financing or directly interested in such labor dispute; (3) were claimants members of a grade or class of workers who participated, financed or were directly interested in such dispute? Questions 2 and 3 are eliminated by the holding of the majority opinion to the effect that no labor dispute existed

within the meaning of the applicable statute, being Chapter 1, Acts of the Legislature, 1936, as amended, and as amended and reenacted by Chapter 76, Acts of the Legislature, 1943, (designated as Code, 21A-6-4(4) in the majority opinion.)

It is not disputed that there was a strike at the establishment of claimants' employer and that pickets were placed at or near the premises where the strike was in progress. Disregarding for the moment the technical definitions of a labor dispute and viewing the situation from a realistic standpoint, I think that a labor dispute in a most pronounced form existed at the establishment where the claimants were employed. Certainly, a strike followed by picketing constitutes more of a labor dispute than a voluntary and wholesale withdrawal because of the absence of a contract providing for conditions of employment. *Miners* v. *Hix*, 123 W. Va. 637, 17 S. E. 2d 810. The following provisions of the National Labor Relations Act defining a labor dispute are pertinent: "The term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee." National Labor Relations Act, U. S. C. A. Title 29, Sub-section 9, Section 152. This Court has tacitly adopted the definition above quoted, using the following language: "We are not bound by the definition of a labor dispute contained in the Federal statutes, but these definitions are at least persuasive of what should be the definition of such a dispute, and are not out of line with the general and common acceptation of the meaning of the term. Until a better definition is found, or there is some substantial reason for a finding that our Legislature had in mind a different meaning to be attached thereto, there would seem to be no impropriety in our accepting these existing definitions in the determination of what was

then meant." *Miners* v. *Hix, supra.* The strike of the CIO affiliate at the plant of the employer of the claimants was for the purpose of forcing recognition of that union as a bargaining agency and certainly had a direct connection with "the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment". A contest between rival unions constitutes a labor dispute and comes within the above quoted definition. See *In re Deep River Timber Company's Employees,* 8 Wash. 2d 179, 111 P. 2d 575. It seems to me that the possibility of a stoppage of work caused by a labor dispute between rival unions where each promoted or caused a strike resulting in a stoppage of work is entirely overlooked in the majority opinion.

The second question hereinabove noted is eliminated by the finding of the appeal tribunal and the board of review that claimants had not participated in or financed the labor dispute, and that they were not directly interested therein, which finding has not been challenged.

The third question presents a difficult situation which has caused confusion among the decided cases in the various jurisdictions. The unemployment compensation acts of the various states are similar in their provisions, being derived from an English statute, enacted in 1920, and practically all contain provisions disqualifying persons from receiving unemployment compensation if they belong to a grade or class of workers who participate, finance or are directly interested in a labor dispute which causes a stoppage of work. The basis of this disqualification is that an employee should not receive unemployment compensation when his lack of employment is caused by his voluntary action or passive conduct. In the case of *Miners* v. *Hix, supra,* that view was adopted and is now the law of this jurisdiction. See Annotation, 135 A. L. R. 920. Where non-striking workers refuse to pass through a picket line established by another union, the former participate in a labor dispute and recovery of un-

employment compensation will be denied. *In re Persons Employed at St. Paul & Tacoma L. Co.*, 7 Wash. 2d 580, 110 P. 2d 877; *Andreas v. Bates*, 14 Wash. 2d 322, 128 P. 2d 300. The basis of disqualification is voluntary idleness. I do not mean to say that the claimants should be denied unemployment compensation benefits, as a matter of law, but it is my view that they should be required to show that they were not of the same grade or class of workers who were on strike, the burden being on claimants to make such showing. *In re Steelman*, 219 N. C. 306, 13 S. E. 2d 544.

The Board of Review made a finding of fact with reference to the claimants and that finding under provisions of Section 21, Article 7, Chapter 76, Acts of the Legislature, 1943, is entitled to the same weight as that accorded to the findings of fact of the trial chancellor. "In equity the findings of fact of the trial chanceller will not be disturbed on appeal unless at variance with undisputed evidence or contrary to the plain preponderance of the whole evidence." Syl. 1, *Hatten v. Hatten*, 110 W. Va. 208, 157 S. E. 582; *Commissioners v. Mining Co.*, 122 W. Va. 442, 9 S. E. 2d 813. This rule is generally applicable to a judicial review of administrative findings relative to unemployment compensation. See *Members of Iron Workers' Union v. Industrial Commission*, (Utah) 139 P. 2d 208.

I would reverse the order of the Circuit Court of Kanawha County and remand this proceeding with directions that each of the claimants be permitted to introduce evidence to show that they were not members of the same group or class which participated in the strike; that each was deprived of employment by events beyond their control; and that they did not passively submit to such unemployment. The record in 'this case is too meager to say that the claimants have met this burden of proof. So far as it appears, they offered in one instance to go through a picket line and on account of threatened violence they did not do so, and that thereafter they obtained

an injunction from a judge of the circuit court. It does not appear whether they made any effort after the injunction was awarded to engage in their usual and customary employment. On remand, if any claimant should fail to show his unemployment was involuntary and that he made active efforts to enter therein, such claimant should be denied compensation.