State of West Virginia by C. S. Davis, Director of

Unemployment Compensation

*v.*

Ruthbell Coal Company

(CC 754)

Submitted October 5; 1949. Decided November 1, 1949.

Lovins, Judge, not participating.

*Leo Loeb, Franklin W. Kern,* for plaintiff.

*Charles H. Haden,* for defendant.

Riley, Judge:

C. S. Davis, director of unemployment compensation, filed this notice of motion for judgment proceeding in the Circuit Court of Kanawha County against the Ruthbell

Coal Company, a corporation. The circuit court certified to this Court its rulings in sustaining the plaintiff's amended demurrer to defendant's amended special plea as to four of the seven grounds of demurrer and in overruling the demurrer as to the remaining three grounds.

On April 16, 1948, the plaintiff filed its notice of motion for judgment against the defendant in the Circuit Court of Kanawha County, together with a statement of account and affidavit attached, seeking to recover from the defendant, an employer under the provisions of the unemployment compensation statute (Acts of the Legislature, Second Extraordinary Session, 1936, Chapter 1, as amended), the amount of $3,680.55, covering alleged delinquent contribution payments to the unemployment fund, required under said unemployment act, from October 1 through December 31, 1947, with interest thereon.

At the risk of being prolix, we think that a proper consideration of this case requires the statement of the matters alleged in defendant's amended special plea *in extenso,* as follows:

The defendant, Ruthbell Coal Company operates two coal mines in Preston County, employing approximately two hundred and eighty men, who are members of an independent union which had a contract with defendant employer, governing wages, hours and working conditions. During the period of April 8, through and including May 13, 1946, the mines of defendant coal company were not operated because defendant's employees refused to cross a picket line set up by members of the United Mine Workers of America, who had come by motor caravan from neighboring counties, where they were on strike, to defendant's mines early in the morning of April 8, 1946, though the United Mine Workers of America had no contract with defendant, and defendant's employees were not affiliated with that organization in any way. The motor caravan approached the mines of defendant, and parked directly across from the tipple and the entry thereto. It is alleged that the occupants of the caravan prevented defendant's employees from entering the mines

to work; that there was no dispute of any kind between defendant and its employees as to wages, hours or working conditions; and, though both the defendant and members of the independent union asked the local law enforcement authorities and the Circuit Court of Preston County for protection, they received none.

It is further alleged that, as a result of the picketing, defendant's mines were not operated from April 8, through and including May 13, 1946, although throughout that period defendant kept its mines ready for operation and continuously fire-bossed, and defendant had plenty of orders to keep the mines in continuous operation. Further, it is alleged that had it not been for the picketing, defendant's employees would have gone to work and defendant's mines would have been operated every day during the period of the picketing.

The amended special plea further alleges that defendant's individual employees filed claims for unemployment benefits under the unemployment statute, Chapter 1, Acts of the Legislature, Second Extraordinary Session, 1936, as amended, but the Kingwood office held up the claims pending a ruling from the plaintiff's office in Charleston.

The amended special plea further alleges that "On June 6, 1946, upon instructions from the plaintiff and upon assurances from the plaintiff that any benefits paid out to claimants for said period would not be charged to defendant's account, the defendant, Ruthbell Coal Company, filed loss of work reports as to the men so working for it as of April 8, 1946, which loss of work reports state on their face that the reason for the men not working was 'Mines Closed by U. M. W. Pickets,' meaning the pickets of the United Mine Workers of America"; and that on the basis of the filing of these loss of work reports, benefits were paid to the defendant's employees in the amount of $15,068.47; that under the provisions of Subsection (8), Section 4, Article 6, Chapter 130, Acts of the Legislature, Regular Session, 1945, the unemployment benefits so paid out were improperly and illegally charged to the account of defendant, since the benefits were paid out without any

disqualification to the individuals who had left work voluntarily for good cause not attributable to the defendant, Ruthbell Coal Company; that upon receipt of knowledge of such improper and illegal charge defendant made timely protest against the same in accordance with Regulation XV of the Regulations of the Director, 1945, issued by the director of unemployment compensation, and made application for a review and redetermination of the amount of the charge and for a refund thereof.

It is further alleged that as a result of such illegal charge the defendant has been assigned by the director a contribution merit rate for 1947 of 2.4%; whereas, if the benefits had not been charged, defendant would have been entitled to have been assigned a contribution merit rate of only 1.4% for the year 1947; that defendant made all quarterly compensation reports to plaintiff, in accordance with law, and paid under protest all contribution payments for the first three quarters of 1947 at the rate of 2.4% of its payroll, which payments total $12,244.50; and that had defendant been assigned an experience merit rate for that year of 1.4% to which it was entitled, the charge would have been $9,689.60, instead of $12,244.50; and, therefore, defendant is entitled to a refund of $2,-544.90, instead of being indebted to plaintiff in the claimed amount of $3,680.55; but the special plea alleges that notwithstanding the defendant was entitled thereto, the refund so claimed was refused by plaintiff.

Before setting out the several questions raised on the circuit court's certificate, we quote Subsection (8), Section 4, Article 6, Chapter 130, Acts of the Legislature, Regular Session, 1945, heretofore referred to in the amended special plea:

"For the purposes of this section an employer's account shall not be charged under any of the following conditions: (1) When benefits are paid without any disqualification to an individual who . has left work voluntarily for good cause not attributable to the employer."

On this certificate the circuit judge certifies the following questions:

1. Is the defense set up by the defendant in its amended special plea in the nature of an original suit against the plaintiff, from which it is immune under Section 35 of Article VI of the Constitution of the State of West Virginia?

2. Is the Circuit Court of Kanawha County without jurisdiction to entertain the said amended special plea, for the reason that defendant's remedy in the premises was by appeal or appeals under the provisions of Article 7, Chapter 1, Acts of the Legislature, Second Extraordinary Session, 1936, as amended by Acts of the Legislature 1937, 1939, 1943, and 1945, Chapters 100, 134, 76, and 130, respectively?

3. Was the eligibility of defendant's employees for benefits without disqualification under Chapter 1, Acts of the Legislature, Second Extraordinary Session, 1936, contestable only under the provisions of Article 7, Chapter 1, Acts of the Legislature, Second Extraordinary Session, 1936, as amended by Acts of the Legislature, 1937, 1939, 1943 and 1945, Chapters 100, 134, 76 and 130, respectively?

4. Does the defendant's amended special plea present a defense to the plaintiff's notice of motion for judgment?

5. Does the defendant's amended special plea, alleging that under the provisions of said Subsection (8), Section 4, Article 6, Chapter 130, Acts of the Legislature, Regular Session, 1945, unemployment compensation benefits paid to defendant's employees, as further alleged in said plea, were improperly and illegally charged to the account of the defendant, meaning its reserve or experience rating account, present a defense to the cause of action set forth in plaintiff's notice of motion for judgment?

6. Do the allegations of the defendant's amended special plea, to the effect, that the defendant issued "Loss of Work Reports" to the claimants, which were the basis upon which the unemployment compensation benefits complained of in defendant's amended special plea, were paid by the plaintiff and charged to the defendant's account, upon instructions from the plaintiff and upon as-

surances from the plaintiff that any benefits paid out would not be charged to the defendant's account, present a defense to the cause of action set forth in the plaintiff's notice of motion for judgment?

The foregoing certified questions embrace the circuit court's rulings on all of the grounds of demurrer except the seventh, which is simply the general ground that the plea is not sufficient in law "for other reasons appearing on the face of said plea."

The trial court, as heretofore stated, sustained the demurrer on grounds numbered 1, 4, 5, and 6, and overruled the demurrer on grounds numbered 2, 3, and 7. From the court's rulings on the points of demurrer and the certified questions involved, it seems that there are presented to us on this certificate four questions: (1) Does the amended special plea constitute a suit against the State prohibited by Article VI, Section 35, of the Constitution of West Virginia; (2) does defendant's remedy lie in an application for a refund under the provisions of Article 7, Chapter 1, Acts of the Legislature, Second Extraordinary Session, 1936, as amended, 1937, 1939, 1943, and 1945; (3) does the special plea present a defense and the right to the counterclaim under Subsection (8), Section 4, Article 6, Chapter 130, Acts of the Legislature, Regular Session, 1945; and (4) do the allegations of defendant's amended plea to the effect that the alleged instructions and assurances from plaintiff that any benefits paid out would not be charged to defendant's account, present a defense?

The questions presented may be narrowed, initially, by excluding the second and fourth grounds without much comment. In the first place, Article 7 of Chapter 1, Acts of the Legislature, Second Extraordinary Session, 1936, as amended, 1937, 1939, 1943, and 1945, applies only to claim procedure and to the determination and allowance of claims for benefits, and, therefore, has no place in this discussion; and, second, the alleged instructions and assurances from plaintiff to the effect that if the loss of work

reports were filed and benefits paid thereunder, the benefits would not be charged to defendant's account, present no defense, because, if the amended special plea constitutes a suit or action against the State within the purview of Article VI, Section 35, of the Constitution, or if defendant's employees do not come within the provisions of Subsection (8), Section 4, Article 6, Chapter 130, Acts of the Legislature, Regular Session, 1945, it matters not what the director, or any of the representatives of the director's office, represented or what assurances were given to defendant, for in either event, the giving of such representations and assurances were beyond the power of the director or anyone under him.

So we have before us only two questions, which are really decisive of this case: (1) Did the counterclaim set forth in the amended special plea constitute a suit prohibited under the immunity clause, Article VI, Section 35, of the West Virginia Constitution; and (2) if it does not, is defendant's account not chargeable with the amount of benefits paid, because of the provisions of Subsection (8), Section 4, Article 6, Chapter 130, Acts of the Legislature, Regular Session, 1945?

The first question contains two determinative factors: (1) Is the counterclaim an action against the State within the meaning of the constitutional provision; and (2) if it is a suit or action for other purposes, did the State of West Virginia, when it haled defendant into court, discard its constitutional immunity?

In determining the question whether the counterclaim is a suit against the State, it becomes necessary to review the pertinent statutory law for the purpose of determining the character of the fund involved, the capacity in which the unemployment department holds the fund, and the State's financial or monetary liability in connection therewith.

The Court's attention is invited to Code, 56-5-9, which provides that "A defendant who files a plea or account under this article shall be deemed to have brought an

action against the plaintiff (at the time of filing the same) for the matters mentioned in such plea or account." This provision was contained in Chapter 172, Virginia Code, 1860. Though this Court did not refer to the above provision of the statute, it said in *Bowdish and Degarmo Bros.* v.*Groscup,* 70 W. Va. 758, 764, 74 S. E. 950: "The filing of a counterclaim is the equivalent of instituting a new suit against plaintiff." This provision of the statute and the statement contained in the *Bowdish* case, in our opinion, has to do only with rules of procedure and practice. The purpose of the statute was only to render clear-cut the issues between parties litigant, and did not have anything to do with the constitutional question before this Court.

Let us revert to the character of the fund. We are impressed with the fact that the State of West Virginia has no direct, substantial or monetary interest in the fund, and no liability connected therewith. The plaintiff in this notice of motion for judgment proceeding is C. S. Davis, director of unemployment compensation: he is an appointive officer of the State. The instant proceeding was not instituted by the State, and, even if it had been, we do not think the State of West Virginia has any direct or substantial interest in the fund. True, the officials who administer it have the duty to see that it is administered properly, but the fund itself is not part or parcel of the funds belonging to the State. The unemployment act, Article 8, Chapter 1, Acts of the Legislature, Second Extraordinary Session, 1936, as amended, established a special fund separate and apart from all public moneys or funds of the State, an unemployment compensation fund. The director is required to maintain in such fund three separate accounts, namely, a clearing account, an unemployment trust fund account, and a benefit account. Upon receipt of money payments into the fund it is deposited in the clearing account carried in a bank. After clearance, moneys in the clearing account are transferred to the unemployment trust fund account, and deposited with the secretary of the treasury of the United States to the credit of the account of this State in the unemployment trust fund. The third account, the benefit account, is main-

tained by the director, the moneys therein being acquired through periodical requisitions on the unemployment trust fund in the United States treasury. Moneys from the benefit account are paid out on the director's signature. And, under Section 19, Article 5, Chapter 130, Acts of the Legislature, 1945, refunds of the amounts of payments erroneously collected, without interest, are directed to be made from the clearing account by the director; and the amounts of interest, erroneously collected, shall be paid out of the unemployment compensation special administration fund set up in Section 5a, Article 9, Chapter 130, Acts of the Legislature, 1945. Thus it may be seen that no part of the fund comes from or enures to the benefit of the State of West Virginia. The State, therefore, has no real interest in the fund. If the benefits were erroneously charged to the employer's account by the director, then under Section 19, Article 5, Chapter 130, Acts of the Legislature, Regular Session, 1945, directing that refunds shall be paid out of the clearing account of the unemployment fund, the allowance of plaintiff's counterclaim and the payment thereof from the clearing account would not in the least deplete or impair the treasury of the State of West Virginia. As the constitutional provision (Article VI, Section 35) evidently was adopted to protect the financial structure of the State, and because of the character of the fund and the provisions of the unemployment act concerning it, plaintiff's counterclaim concerns the State only in an indirect and nonconsequential manner, so as not to affect, even indirectly, the liability of the State and the integrity of its treasury, the counterclaim is not a suit or action against the State within the meaning of the constitutional provision.

Thus the cases of *Miller* v. *State Board of Agriculture,* 46 W. Va. 192, 32 S. E. 1007; *The Miller Supply Co.* v. *State Board of Control,* 72 W. Va. 524, 78 S. E. 672; *Stewart* v. *State Road Commission of West Virginia,* 117 W. Va. 352, 185 S. E. 567, brought to enforce a contract; and the cases of *Barber, Admx.* v. *Spencer State Hospital,* 95 W. Va. 463, 121 S. E. 497, and *Mahone* v. *The State Road Commission of West Virginia,* 99 W. Va. 397, 129 S. E. 320, each

involving an action brought against a direct governmental agency of the State to recover for an alleged wrong, are not in point. In all these cases payment for the liability asserted against the State must come from the State treasury, and, as these cases, unlike defendant's counterclaim, concern the State in a direct and consequential manner, the actions involved therein fall directly within the inhibition contained in Article VI, Section 35, of the State Constitution.

For another reason, we think plaintiff cannot interpose the immunity clause of the State Constitution as a defense to defendant's counterclaim: the counterclaim is not a new suit or action brought in the first instance against the State. Plaintiff first came into a circuit court far removed from the place of defendant's corporate activities, and haled defendant, Ruthbell Coal Company, to the bar of that court. Why then is plaintiff not bound by the same rules of procedure as any party litigant? In invoking the jurisdiction of the Circuit Court of Kanawha County, plaintiff, in our opinion, has taken the position of an ordinary suitor, and even if plaintiff is "a direct governmental agency of the State," as the state road commission was held to be in the case of *Mahone* v. *The State Road Commission, supra,* the State has laid aside its sovereignty and the concomitant immunity from an action or suit provided by Article VI, Section 35, of the Constitution; and defendant, therefore, is entitled to assert by pleading and proof all matters purely defensive. *State ex rel. McCain* v. *Metschan,* 32 Ore. 372, 46 P. 791, 53 P. 1071, 4 L. R. A. 692. In our opinion, where, as here, defendant's claim arises out of the same transaction upon which plaintiff is seeking to recover liability against the defendant, that is, the levy of a tax for a specific purpose (in this case an excise tax) plaintiff's claim and counterclaim are so closely related that the State's immunity against a suit or action under the immunity clause of our Constitution does not constitute a defense. *State* v. *Arkansas Brick & Manufacturing Co.,* 98 Ark. 125, 135 S. W. 843, 33 L. R. A. (N. S.) 376.

Our attention has not been directed to, and we have not found any West Virginia decision to the effect that in a suit or action brought by the State to recover a liquidated claim, the State's immunity under Article VI, Section 35, of the Constitution may be asserted as a defense to a counterclaim growing out of the same transaction. This Court, however, has indicated that where, in the first instance, the State has instituted a suit or action against a citizen, it thereby lays aside its sovereignty and is subject to all procedural rules which govern any other party litigant. In *State* v. *King,* 76 W. Va. 10, 84 S. E. 902, in which this Court held that money paid into court for the redemption of forfeited lands under a decree which was subsequently reversed, should be refunded to the person by whom it was paid, by way of restitution. The Court said at page 12 of the opinion: "As the State herself is plaintiff in the cause and has virtually sued King, it is very difficult to see how his counterclaim can be regarded as a suit against the State." In *State* v. *Moore,* 77 W. Va. 325, 87 S. E. 367, a suit brought by the State pursuant to Chapter 105, Hogg's Code, 1913, to sell for the benefit of the school fund, lands claimed by the defendants, it was held that the defendants may have a decree erroneous as to them corrected by a bill of review, this Court holding in point 3 of the syllabus: "And where the State is plaintiff in such suit, and the erroneous judgment or decree is in its favor, the error may be so corrected notwithstanding the provision of section 35 of article 6, of the Constitution, that the State shall never be made a defendant in any court of law or equity." On page 328 of the opinion, the Court said:

"Another point urged by the attorney general in support of the decree, and against appellate jurisdiction to review it, is that the bill of review is a new suit, and that the State and its officers cannot be made defendants thereto. While in a sense a bill of review is the beginning of a new suit; * * * so also is a writ of error or appeal prosecuted in this court. * * * But proceedings by bill of review, and by writ of error or appeal, are substantially for the same purpose, namely, the

correction of errors in decrees or judgments already entered, and it would be a strange doctrine, and one fraught with wonderful consequences, if in construing section 35, of article 6, of our constitution, we were obliged to hold that where the State herself sues, and invokes the aid of her courts in maintaining her rights, a humble citizen thus haled into court can never have the errors in decrees in her favor corrected by bill of review or by appellate process. * * * By herself suing the State subjects herself to all appropriate process to correct errors in judgments or decrees in her favor. Hundreds of cases occur in the books showing this to be the conceded practice. It could not well be otherwise."

In that case the Court distinguished *Miller* v. *State Board of Agriculture, supra,* and *Miller Supply Company* v. *State Board of Control, supra,* in which direct governmental agencies of the State were sued as parties defendant, which cases are cited by counsel for the plaintiff herein, in support of the contention that plaintiff here has immunity as against defendant's counterclaim.

We think it would be unconscionable and contrary to the due process clauses contained in the Fourteenth Amendment to the Constitution of the United States, and Article III, Section 10, of the West Virginia Constitution, to permit the State, as a plaintiff, to bring a citizen into court for the purpose of asserting liability against such citizen, and then strip that citizen of all of the procedural rights and defenses which he would have if the State had not been a party plaintiff.

We, therefore, are of the opinion that the counterclaim set up in the amended special plea is not a suit against the State within the meaning of Article VI, Section 35, of the Constitution of this State; that the State, through its unemployment director, having elected to assert liability against the defendant, has discarded that immunity, which is part and parcel of its sovereignty; and that if defendant's amended special plea asserts a defense and counterclaim, which would have been valid in law if plaintiff were a private party litigant, the trial court was not justified in

sustaining, as it did, plaintiff's demurrer to the amended special plea on the ground that the counterclaim was a suit or action against the State within the meaning of the immunity clause of the State Constitution.

Having decided that defendant's counterclaim is not, in the circumstances of this case, a suit or action against the State within the inhibitory provisions of Article VI, Section 35, of the Constitution, it is perhaps unnecessary for us to address ourselves to defendant's position that it, having made application for a refund by an adjustment, in connection with its contribution payments to plaintiff under Chapter 130, Article 5, Section 19, Acts of the Legislature, Regular Session, 1945, the director is charged simply with the ministerial duty of making refunds, and, therefore, defendant contends that if the counterclaim does constitute a suit against the State, nevertheless, defendant is entitled to prevail on its counterclaim. It is contended by defendant in its brief that the duty in proper cases to grant a refund being ministerial, and if defendant is not permitted to prevail under the counterclaim on the theory that defendant is simply seeking a refund, "It would be impossible for the defendant to insist upon the enforcement of its rights to the refund" under the statute; and that the refund statute would be meaningless "if to require the plaintiff in this instance to give such refund amounts to a suit against the State." With this position we do not agree. If the director is under the duty to make a refund under the statute, which duty is purely ministerial, the duty would be enforced in a proceeding in mandamus under the rulings of this Court in *State ex rel. Wheeler & Co.* v. *Shawkey,* 80 W. Va. 638, 93 S. E. 759. But this is not a mandamus proceeding, and it is unnecessary for us in view of our holding that defendant's counterclaim is not a prohibited suit against the State to answer or consider further the question posed by counsel for the defendant under the refund statute.

We now come to a discussion of the basic question of substantive law involved in this case: Is defendant's account not chargeable with the amount of benefits paid,

because of the provisions of Acts of the Legislature, Regular Session, 1945, Chapter 130, Article 6, Section 4, Subsection (8), which reads, in part: "For the purpose of this section an employer's account shall not be charged under any of the following conditions: (1) When benefits are paid without any disqualification to an individual who has left work voluntarily for good cause not attributable to the employer." As the benefits charged against defendant's account were for the period during which defendant's mines were not operated as a result of the picketing from April 8, through and including May 13, 1946, the foregoing is the pertinent provision of the statute and not Chapter 162, Article 6, Section 4, Subsection (8), Acts of the Legislature, Regular Session, 1947, cited in plaintiff's brief, which reads: "For the purposes of this section an employer's account shall not be charged under any of the following conditions: (1) When benefits are paid without any disqualification to an individual who has left his most recent work for good cause not involving fault on the part of the employer." This latter statute deletes the word "voluntarily," which was contained in the 1945 statute, and for the first time qualifies the word "work" by the words "his most recent." Whether the 1945 or the 1947 statute is applicable, in our opinion, is not material to a decision of this case, because the benefits paid and charged were for the period which began when defendant's employees left their most recent work, and, as stated by this Court in *Board of Review of West Virginia Department of Unemployment Compensation v. Hix*, 126 W. Va. 538, 541, 29 S. E. 2d 618: "We believe it is equally clear that a fair reading of the act shows beyond peradventure that its purpose was to include, as far as practicable, all those who were involuntarily and temporarily out of work."

Reverting to the pertinent statute, Acts of the Legislature, 1945, it is readily seen that Subsection (8) was enacted for the benefit of the employees of those employers who alone paid into the fund. If the benefits were improperly paid by the director, that, of course, does not bear on the question whether under Subsection (8) the

benefits should not be charged. If the director wrongfully paid benefits, the payment thereof becomes a moot question, and, of course, an employer should not be charged for benefits which the director was not justified in paying.

In paying the benefits in the instant case, the director, evidently acting upon the decision of this Court in *Board of Review etc.* v. *Hix, supra,* took the view that defendant's employees' temporary loss of employment was not due to a stoppage of work which existed because of a labor dispute at defendant's mines within the meaning of Acts. of the Legislature, Regular Session, 1945, Chapter 130, Article 6, Section 4, Subsection (8). In the last-mentioned case in point 1 of the syllabus, this Court held: "A strike called by a labor union, of which a part only of the workmen at the plant affected are members, that involves no disagreement with the employer but is caused by a lack of agreement among the employees, not shown to have been influenced by the employer, concerning labor union affiliations, is not a labor dispute within the meaning of that term as used in Code, 21A-6-4(4)." In that case, claimants were not members of the Congress of Industrial Organizations, commonly known as the CIO, the members of which organization were engaged in a strike at the plant at which claimants, who were not members of the striking organization, were employed. From the opinion it appears that: "The plant was picketed and * * * the workmen who were not members of the CIO and wished to continue work were prevented from entering the plant by threatened violence." Surely, here if the allegations of defendant's amended special plea are, as they should be on this appraisement, taken as true, defendant's employees not being members of the United Mine Workers of America, whose members were conducting the picket line, were not engaged in a labor dispute, and whatever dispute existed between the defendant and the members of the United Mine Workers of America, defendant's employees were not "participating, financing, or directly interested in such dispute, and did not belong to a grade or class of workers who were participating,

financing or directly interested in a labor dispute which resulted in the stoppage of work" within the meaning of said Section 4, Article 6, Chapter 130, Acts of the Legislature, Regular Session, 1945. From the allegations of the amended special plea, in addition to the foregoing, it appears that defendant was operating its mines under contracts with a so-called independent union. Its mines were picketed because it had no contract with the organization conducting the picketing. During the period of the work stoppage, the amended special plea alleges that defendant constantly kept its mines in proper working condition, open for the men to enter, and fully fire-bossed. Under defendant's allegations defendant had no labor dispute with its employees, but they did not work during the period for which benefits were paid, and allegedly illegally charged, because the amended special plea alleges the men were prevented from working by those making up the picket line. While it is true in some jurisdictions that the refusal to pass through a picket line by persons not members of the striking union has been held to amount to leaving work because of a labor dispute, *In Re Persons Employed at St. Paul and T. Lumber Co.*, 7 Wash. 2d 580, 110 P. 2d 877, 135 A. L. R. 924; *Bodinson Manufacturing Co. v. California Employment Commission*, 17 Cal. 2d 321, 109 P. 2d 935; *Grace & Co. v. California Employment Commission* (Cal. App.), 128 P. 2d 632, such is not the law in this jurisdiction. See *Board of Review, etc. v. Hix, supra*, in which case the nonstriking claimants were actually prevented from entering the plant by "threatened violence."

If under the allegations of the amended special plea, defendant's employees come within the provisions of Acts of the Legislature, Regular Session, 1945, Chapter 130, Article 6, Section 4, Subsection (8), so as to render the charge against defendant's account illegal, it becomes necessary to determine whether at the time defendant's employees left work they were disqualified or they left work voluntarily for good cause not attributable to the employer. Surely, under the allegations of the amended special plea, defendant's employees were not caused to

leave their work in the mines through any fault of the employer: under defendant's allegations it used every reasonable means to keep its mines open and available for its employees to enter and work during the entire course of the picketing. Defendant alleges that it and its employees sought in vain for police protection and received none. But did defendant's employees leave "work voluntarily for good cause"? We think they did. The amended special plea does not allege that they were physically prevented from entering the mines or going through the picket line. If they had attempted to go through the picket line, it may be that the attempt would have been attended with some degree of danger, but it was for defendant's employees to say whether in the interests of continuing with their work they would subject themselves to possible danger. In deciding not to do so, they exercised their own free will, and in the exercise of that will, they were engaged in a voluntary act, and because of the threatened risk they left their work, not only voluntarily, but, as was held by this Court in the case of *Board of Review, etc.* v. *Hix, supra,* their refusal to work was not in furtherance of a labor dispute.

As heretofore stated, Subsection (8) of Section 4, of Article 6, Chapter 130, was incorporated in the unemployment law of this State for the first time in 1945. All of the preceding subsections of Section 4, Article 6, deal with the payment of benefits, and Subsection (8) was evidently designed to give the employers, who under the unemployment statute bear the full burden of creating and maintaining the fund, some relief from this burden. It may be that the Legislature was prompted by the rapid growth of the fund during the comparatively short period of years to take this course. But whether this was the legislative motive, the fact remains that the purpose of said Subsection (8) was to relieve employers of a part of the burden heretofore placed upon them. The statute in that regard is remedial, and it should be liberally interpreted and applied to effectuate that purpose. Lewis' Sutherland Statutory Construction, Second Edition, Section 582. In so doing, we are persuaded that defendant's employees

were paid benefits without disqualification, and that they left their work voluntarily, through no fault of their own attributable to the employer. It necessarily follows that whether the benefits were rightfully paid, employer's account was illegally charged.

For the foregoing reasons we are of opinion that in the pending notice of motion for judgment proceeding, the defendant, Ruthbell Coal Company, has the full right by its plea at bar to defend against plaintiff's claim of $3,-680.55, and to recover over against plaintiff the amount of $2,544.90 asserted in defendant's counterclaim, provided defendant's pleadings are sustained by proof.

We therefore reverse the ruling of the Circuit Court of Kanawha County in sustaining plaintiff's amended demurrer to defendant's amended special plea on grounds numbered 1, 4, 5, and 6, and affirm its action in overruling the amended demurrer on grounds numbered 2, 3, and 7, and remand this cause for further proceedings consistent with the view herein expressed.

*Ruling reversed in part; affirmed in part; and cause remanded.*