IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED

July 1, 2024

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**SUZANNE D. WOODS,**
**Claimant Below, Petitioner**

**v.) No. 23-ICA-295**      (WorkForce W. Va. Bd. of Rev., Case No. R-2023-0531)

**BOB BURDETTE CENTER, INC.,**
**Employer Below, Respondent**

**and**

**WORKFORCE WEST VIRGINIA,**
**Respondent**

## MEMORANDUM DECISION

Petitioner Suzanne D. Woods appeals the June 12, 2023, decision of the WorkForce West Virginia Board of Review ("Board"), which found she was ineligible for unemployment compensation. Respondents Bob Burdette Center, Inc. ("Employer") and WorkForce West Virginia ("WorkForce") each filed a response.[1] Ms. Woods did not file a reply. The issue on appeal is whether the Board erred in its determination that Ms. Woods had left her employment voluntarily without good cause involving fault of her employer, and was, therefore, disqualified from receiving unemployment benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Woods worked for Employer as a tutor at its North Charleston location from August 7, 2016, to February 22, 2023. She worked four hours per day at a rate of twenty-five dollars per hour. Ms. Woods was permitted to work a total of ten to fifteen hours every two weeks. However, Ms. Woods was submitting timesheets reflecting up to thirty hours of work per two-week period. According to Ms. Woods, she had an agreement with Employer's former executive director, who previously approved her to submit additional

---

[1] Ms. Woods is represented by Lori M. Waller, Esq. Bob Burdette Center, Inc. is represented by David J. Mincer, Esq., and WorkForce is represented by Kimberly A. Levy, Esq.

hours because she was tutoring two different subjects.[2] Ms. Woods would clock in for work hours prior to the location opening. Ms. Woods claimed she was using that time to sanitize the classrooms, make photocopies for her lessons, or to perform other administrative tasks prior to the children arriving. Employer's current Executive Director, Dianna Graves ("Director Graves"), instructed North Charleston management to direct Ms. Woods to stop submitting timesheets that exceeded the ten to fifteen biweekly hours she was authorized to work. Despite this directive, Ms. Woods' timesheet practices did not change.[3]

On February 21, 2023, Director Graves met with Ms. Woods. According to Ms. Woods, Director Graves advised her that if she did not limit her timesheets to the biweekly total of ten to fifteen hours, her employment would be terminated. During the administrative hearing, Director Graves testified that she met with Ms. Woods to discuss the hours reported on her timesheets but denied giving Ms. Woods the ultimatum to comply or be terminated; in fact, Director Graves stated she was not contemplating formal discipline against Ms. Woods when the meeting occurred. Instead, Director Graves explained that tutors are Employer's highest paid positions; all of its tutors are limited ten to fifteen hours of work per week, which includes two hours for a planning period to make copies and prepare their lesson plans; and that cleaning or sanitizing is not part of their tutors' job description. It was explained to Ms. Woods that her reported work hours exceeded the hours authorized for her position and related to her at the time Employer offered her employment. During this meeting, both parties became argumentative and raised their voices concerning the issue. Ms. Woods contended that she tried to explain why she was logging additional hours, but Director Graves did not allow her to do so. It is undisputed that Ms. Woods voluntarily left her employment during or after this meeting.

On February 26, 2023, Ms. Woods filed a claim for unemployment benefits. By WorkForce Deputy's Decision dated March 10, 2023, it was determined that Ms. Woods was ineligible for unemployment benefits pursuant to West Virginia Code § 21A-6-3(1) (2020), because Ms. Woods had voluntarily left her employment without good cause involving fault of the employer.[4] Ms. Woods appealed this ruling to the Board and an

---

[2] Aside from her testimony, Ms. Woods offered no further evidence below to corroborate this purported agreement.

[3] It is unclear when Employer first addressed this issue with Ms. Woods prior to February of 2023. According to Ms. Woods, this issue was first addressed at least one year prior to February of 2023; the ALJ's decision suggests this issue was discovered or addressed at some point after the location reopened following the COVID-19 pandemic. Nevertheless, this timeframe is irrelevant to our determination on appeal because it is uncontroverted that Ms. Woods voluntarily quit her employment on February 21, 2023.

[4] West Virginia Code § 21A-6-3(1) states that an individual is disqualified from unemployment compensation benefits: "For the week in which he or she left his or her

2

administrative hearing was held before the Board's administrative law judge ("ALJ") on April 4, 2023.

The ALJ issued a written decision on April 10, 2023, reversing the Deputy's Decision. In a somewhat confusing decision, the ALJ first found that Ms. Woods was discharged from her employment and her eligibility for benefits was governed by West Virginia Code § 21A-6-3(2) (2020). However, the preceding paragraphs of the ALJ's decision set forth that Ms. Woods voluntarily left her employment over the timesheet issue, and that there was equal evidence presented by the parties. The ALJ's decision held: (1) Ms. Woods was eligible for unemployment benefits because she was ordered by Employer to change her current timesheet practices; (2) that she quit her employment for good cause; and (3) that Ms. Woods had been discharged but not for misconduct. Employer appealed this decision to the Board.

On June 12, 2023, the Board issued its written decision. That decision found that contrary to the ALJ's finding, there was no evidence that a discharge ever occurred, and that "[q]uitting in the face of a possible discharge does not elevate a claim to a discharge case." Instead, the Board found that termination never became an issue because it was undisputed that Ms. Woods voluntarily left her employment. Due to Ms. Woods voluntarily leaving her employment, the Board found the only question was whether she was eligible for unemployment benefits under West Virginia Code § 21A-6-3(1); in other words, whether she voluntarily quit her employment for good cause involving fault of Employer.

On that issue, the Board concluded that the evidence showed that Ms. Woods was not discharged, but rather, she had voluntarily quit her employment, and that she had failed to prove her voluntary quit was the result of fault on the part of Employer. The Board reversed the ALJ's ruling and reinstated the Deputy's Decision. This appeal followed.

In this appeal, our standard of review is as follows:

> The findings of fact of the Board of Review of [WorkForce West Virginia] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*.

*Taylor v. WorkForce W. Va.*, 249 W. Va. 381, ___, 895 S.E.2d 236, 241 (Ct. App. 2023) (quoting Syl. Pt. 3, *Adkins v. Gatson*, 192 W. Va. 561, 563, 453 S.E.2d 395, 397 (1994)).

---

most recent work voluntarily without good cause involving fault on the part of the employer and until the individual returns to covered employment and has been employed in covered employment at least 30 working days."

3

On appeal, Ms. Woods' sole assignment of error is that the Board erred when it determined she failed to establish that she left her employment "without good cause involving fault on the part of the employer" under West Virginia Code § 21A-6-3(1). Notably, Ms. Woods does not challenge the Board's finding that she voluntarily quit her employment; instead, she challenges its finding that she had not established fault by her employer as required by statute. W. Va. Code R. § 84-1-5.6.1 (2018) (placing burden of proof for claims brought pursuant to West Virginia Code § 21A-6-3(1) on claimants).

On this issue, Ms. Woods argues she left her employment after Employer unilaterally imposed a significant reduction of her work hours and because she was threatened, harassed, and accused of fraud by Director Graves. Ms. Woods also argues that Employer failed to present any evidence to establish that her terms of employment limited her to working only ten to fifteen hours every two weeks. We are not persuaded by these arguments.

From the outset, we dispose of Ms. Woods' argument that Employer failed to offer evidence to establish that she was only permitted to work ten to fifteen hours every two weeks. Ms. Woods did not raise this argument below and cannot raise it for the first time on appeal. *See WorkForce W. Va. v. Carpenter*, No. 23-ICA-19, 2023 WL 7202671, at *2 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision) ("Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.") (quoting *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (citations omitted)).

Next, Ms. Woods contends she quit her employment due to the reduction of her work hours by Employer; however, that position is not supported by the record. Instead, Ms. Woods' testimony at the administrative hearing shows she left her employment because she felt attacked by Director Graves when she was questioned about her timesheet practices. She further testified that instead of discussing the issue further (with Director Graves or Employer's governing board), she told Director Graves, "you're not gonna fire me, I'll just quit" and then walked out of the meeting. She also acknowledged raising her voice with Director Graves. Thus, all that can be gleaned from the record is that Ms. Woods abruptly left the meeting and quit her job prior to having any meaningful discussion on the issue.

Finally, there was no definitive evidence that Ms. Woods was threatened, harassed, or accused of fraud. The parties offered different recollections of the conversation between Ms. Woods and Director Graves during the meeting on February 21, 2023. The parties do agree, however, that Ms. Woods quit her job and walked out of that meeting. This event was a significant factor in the Board's determination that Ms. Woods failed to show fault on the part of her employer. Upon review, we find the Board is entitled to deference on this issue. As previously established, the parties have differing views regarding many of the

events on February 21, 2023, except, the parties do not dispute that Ms. Woods abruptly quit her job and walked out of the meeting.

As our state's highest court has stated:

> The unemployment compensation program is an insurance program, and not an entitlement program, and is designed to provide "a measure of security to the families of unemployed persons" who become involuntarily unemployed through no fault of their own. "The [Act] is not intended, however, to apply to those who 'willfully contributed to the cause of their own unemployment.'" *See Hill v. Board of Review,* 166 W.Va. 648, 651, 276 S.E.2d 805, 807 (1981) (quoting *Board of Review v. Hix,* 126 W.Va. 538, 541, 29 S.E.2d 618, 619 (1944)). From our reading of the Act, we believe the obligation of employees under the Act is to do whatever is reasonable and necessary to remain employed.

*Childress v. Muzzle*, 222 W. Va. 129, 133, 663 S.E.2d 583, 587 (2008).

There is no evidence in the record which establishes fault on the part of the employer as the basis for Ms. Woods leaving her employment. Rather, Ms. Woods' testimony establishes that she took exception to Director Graves' timesheet inquiry, became angry and raised her voice, and then quit her job and walked out of the meeting. Her testimony further shows her actions were based on her unwillingness to discuss the timesheet issue. Here, Ms. Woods' own actions contributed to her unemployment. Further, by refusing to discuss the timesheet issue, Ms. Woods failed to do what was "reasonable and necessary to remain employed." *Id*. As such, we do not find the Board's determination in this matter to be clearly wrong.

Accordingly, we find no error and affirm the Board's June 12, 2023, decision.

Affirmed.

**ISSUED:** July 1, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear