Opinion by
Montgomery, J.,
This appeal is by the employer, Jones and Laughlin Steel Corporation, from decisions of the Unemployment Compensation Board of Review allowing claims for compensation filed by four men employed in the P2-14" Bar Mill of its Pittsburgh Works Division. Approximately 300 men were employed in that department. The four claims before us are representative of similar claims filed by the entire group.
On or about June 26, 1959, claimants were laid off to permit repairs to be made to certain machinery in *210 the mill, specifically, the electric motors for P2-14" Bar Mill. The motors had been sent out of the plant to' - the General Electric Company to. be repaired and had not been returned by July 15, 1959, on which day a nation-wide steel strike was called by the United Steel Workers óf America, which is the collective bargaining agent for these' employes. This strike continued until November 7, 1959, when the United.'States Supreme Court. affirmed a decision rendered on October 21, 1959 by the United States District Court for-the Western District of Pennsylvania, ordering the strikers back to. work! Following that affirmance the motors were returned to the plant and installed, and the men were recalled for the resumption of operations in that unit as of November 11, 1959.
It is the contention of appellant that claimants’ unemployment on and subsequent to July 20, 1959, was due to the strike, since, it alleges, the motors had befen repaired and could have been installed for the resumption of operations on that date, had it not been for the strike. It offered evidence in the form of a'letter addressed to Mr... George C. Brown, the Unemployment compensation referee to whom these cases had been assigned, dated, September 8, 1960, and signed by F. X. Duffy, Supervisor, Employment Department • for Jones and Laugh-line Steel Corporation, which read as follows:
“Relative to hearings on original appeals held September 1, 1960, this is in reply to your request for information regarding the repair of motors in the. Jones, and Laughlin Steel Corporation, Pittsburgh Works, Í4" Rolling Mill. Our records indicate that the motors were removed on June 29,-1959, and had been available by the 18th of July, and. the mill was scheduled, at. that time to resume operations on July 20, 1959. .
“According to our purchase order, it is shown that the cost of repairs paid to the - General Electric Company was commensurate with the costs quoted.the.Cor *211 poration on April 28, 1959, which was to cover the overtime required to complete the work within a period of three weeks. Hence, it was anticipated by the department superintendent that the motors would be ready for installation on the 17th or 18th of July, and that operations would be resumed on July 20, 1959. However, the national work stoppage by the United Steel Workers of America occurred on July 15, 1959, and as the result of this the motors were not returned until November 11, 1959.”
There was no other evidence to show when the repairs to the motors had been completed by the General Electric Company or when they were available for return and installation.
To refute any implication from this letter favorable to the employer the claimants offered evidence that the time required for making the repairs had been estimated by management representatives to be six weeks or more, and that at no time was any request made by the employer to the union for permission to return and install them, as was done in other cases of maintenance and repair work performed in the mill during the period of the strike.
On the evidence just recited the board found that the labor dispute did not prolong claimants’ unemploytnent. In the absence of any definite evidence from witnesses in a position to know about the motor repairs, we cannot say that the board acted capriciously in refusing to accept the letter from Mr. Duffy as esr tablishing the fact that the repairs had been completed and installation possible prior to July 20, 1959. On the other hand, the finding which it did make can be sufficiently supported by the record, unless the fact that the strike which occurred on July 15, 1959, of itself, is sufficient to nullify such finding.
We are satisfied also that the record sufficiently supports the board’s other findings, viz., that claim *212 ants were laid off June 27, 1959, because of motor trouble, without a definite date of recall, and that such layoff was not in anticipation of the strike. These findings were practically admitted by Mr. Duffy, employer representative at the hearing before the referee.
Since it has been found that the separation was not due to anticipation of the strike, our decision in Mosko Unemployment Compensation Case, 199 Pa. Superior Ct. 73, 184 A. 2d 395, cited by appellant, is not in point. However, it is frankly stated in the brief of appellant’s counsel that, “. . . the Company did not base its case upon this proposition, and presumably it need not be decided in this case.”
In Gianfelice Unemployment Compensation Case, 396 Pa. 545, 551, 153 A. 2d 906, 909, our Supreme Court said that, “. . . rather, the factual matrix at the time of separation should govern.” However, it is subject to change, as in the case of one who has a valid separation and subsequently retires or resigns. Amado Unemployment Compensation Case, 177 Pa. Superior Ct. 506, 110 A. 2d 807; Campbell Unemployment Compensation Case, 175 Pa. Superior Ct. 592, 106 A. 2d 687. This observation leads us to the crucial issue in the present case. Was the valid separation possessed by these claimants changed as a result of the general strike called by their bargaining agent? We conclude that it was not changed.
Admittedly claimants remained employes of Jones and Laughlin Steel Corporation during the period of the strike and would benefit by gains that might be secured as a result of it. Oluschak Unemployment Compensation Case, 192 Pa. Superior Ct. 255, 159 A. 2d 750. However, section 402(d) of the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended, 43 P.S. §751 et seq., renders an employe ineligible for compensation only when his unemployment “. . . is due to a stoppage of work which *213 exists because of a labor dispute (other than a lockout) ____” 43 P.S. §802(d). In the light of the board’s findings, we are led to the inevitable conclusion that claimants’ unemployment originally and continuously through the period of the strike was due to the fact that the facilities for the performance of their duties were not supplied by the company, and that this situation existed regardless of the strike. It was within the power of the employer to change this situation by attempting to install the motors. However, there was no evidence acceptable to the board that anything of this nature was done until after the termination of the strike. Appellant argues that this effort would, have been futile. We do not agree. There is evidence that the union co-operated with the employers during the strike by permitting other repairs and general maintenance to be done. Furthermore, although unsuccessful, it would have been effective to demonstrate that these claimants were unemployed because of the strike and not because the facilities were unavailable. We cannot accept as unanswerable appellant’s principal contention that “a claimant unemployed for a reason unrelated to the strike is disqualified if the strike prevents the removal of the reason for his unemployment.” It was possible for the employer to remove the original reason but it took no steps to do so. Bako Unemployment Compensation Case, 171 Pa. Superior Ct. 222, 90 A. 2d 309, cited by appellant, is not applicable to the present situation.
The general rule in cases of this nature, established by cases from other jurisdictions, would seem to be that “. . . if unemployment is originally caused by a lack of Avork and a labor dispute develops during the unavailability of work, the dispute does not disqualify the employee until work becomes available and he refuses the work because of the dispute.” 81 C.J.S. Social Security and Public Welfare §187. Muncie Found *214 ry Division of Borg-Warner Corporation v. Review Board of Employment Security Division, 51 N.E. 2d 891; Tucker v. Smelting & Refining Co., 55 A. 2d 692; In re Wittlaufer, 277 App. Div. 805, 96 N.Y.S. 2d 877; In re Sadowski, 257 App. Div. 529, 13 N.Y.S. 2d 553; Employees of Lion Coal Corporation v. Industrial Commission, 100 Utah 207, 111 P. 2d 797.
Although employees were held disqualified in two Michigan cases, Abbott v. Appeal Board of Michigan Unemployment Compensation Commission, 323 Mich. 32, 34 N.W. 2d 542, and in Clapp v. Appeal Board of Michigan Unemployment Compensation Commission, 325 Mich. 212, 38 N.W. 2d 325, in both cases it was demonstrated that during the strike work was available and rejected because of the strike.
. We finally conclude and decide that where unemployment is due to lack of work, the mere occurrence of a labor dispute will not change the legal causation of the unemployment unless work becomes available and is rejected by the employe because of the strike. Because the board found that the layoff was caused originally by lack of work and no work was available until after the strike ended, the fact that there was a strike is not a relevant factor.
The board’s decisions are affirmed.