RALPH W. HILL *et al.*

*v.*

BOARD OF REVIEW, *etc. et al.*

AND EASTERN ASSOCIATE COAL CORP.

(No. 14944)

Decided April 3, 1981.

*Ross Maruka & C. Patrick Carrick* for appellants.

*Shaffer & Shaffer, Charles S. Piccirillo & R. L. Theibert,* for appellees.

McGRAW, JUSTICE:

This case comes to us on appeal from a final order of the Circuit Court of Kanawha County which affirmed the judgment of the Board of Review of the West Virginia Department of Employment Security denying unemployment compensation benefits claimed by the appellants. Specifically, the Board of Review found that the appellants were not eligible for such benefits in that they were neither totally nor partially unemployed and were not available for work for which they were fitted by prior training and experience during the period of work stoppage involved here and, further, that appellants were disqualified from receiving unemployment compensation in that the work stoppage was occassioned by a labor dispute in which the appellants participated. We agree with the appellant's contention that the circuit court erred in affirming the findings and judgment of the Board of Review and we reverse the ruling of the circuit court.

The facts are essentially undisputed. The appellants were all employees of the appellee, Eastern Associated Coal Corporation (hereinafter Eastern), at the Federal No. 1 Mine at Grant Town, and were all members of United Mine Workers of America Local 4047 in July and August of 1976, when this dispute arose. In July 1976 an unauthorized strike by UMWA members started in the southern West Virginia coalfields and spread throughout the mining

industry.[1] On July 26, 1976, roving pickets appeared at the Federal No. 1 Mine on the midnight shift. The appellants honored the picket line and did not appear for work, although there was no dispute between Eastern and Local 4047 at that time. As a result, the Federal No. 1 Mine was closed down from July 26, 1976, until August 2, 1976. Other mines were also closed down by roving pickets during this time.

On August 1, 1976, the members of Local 4047 voted to attempt to return to work unless prohibited by picket lines. At the 12:01 a.m. shift on August 2, 1976, pickets were present at the Federal No. 1 Mine. The appellants again honored the picket line and did not report for work. At the day shift, however, no pickets were present and approximately fifteen of the appellants appeared for work at that time.

During the day shift on August 2, 1976, a fire in the switching panel shorted out the communications system at the Federal No. 1 Mine. Eastern set about repairing the system and announced that no work would be available at the mine except for work performed in repairing the communications system. The repair work, which was performed by contract men, members of Local 4047, took approximately five days, during which time Eastern announced through regular channels that no work was available. During this time no pickets appeared at the Federal No. 1 Mine.

On August 8, 1976, Eastern announced through regular channels that work would be available at the Federal No. 1 Mine beginning at the 12:01 A.M. shift on August 9, 1976. At the beginning of that shift, however, roving pickets were again present and the appellants did not report for work. Local 4047 returned to work on the day shift on August 12, 1976, as did all other employees at mines in the area that had been shut down by roving pickets since July 26, 1976.

---

[1] The strike was precipitated by dissatisfaction of certain UMWA members with their employers' practice of seeking injunctions and temporary restraining orders in federal court in order to quell wildcat strikes. This does not appear to have been an issue creating a dispute between the appellants and Eastern.

At no time during the period from July 26, 1976 to August 12, 1976, did any of the members of Local 4047 picket the Federal No. 1 Mine, nor did Local 4047 have any dispute with the management of the mine at that time.

Beginning on August 18, 1976, the appellants filed claims for unemployment compensation benefits with the West Virginia Department of Unemployment Security pursuant to W. Va. Code § 21A-6-1 *et seq.* (1978 Replacement Vol.). The claims were referred to the Appeals Tribunal for an initial determination pursuant to W. Va. Code § 21A-7-4 (1978 Replacement Vol.), respecting the handling of labor dispute claims, and a hearing was held on December 29, 1976. On January 3, 1977, the Appeals Tribunal entered an order rejecting the appellants' claims. The appellants appealed this decision as provided in W.Va. Code § 21A-7-9 (1978 Replacement Vol.) to the Board of Review which, by order dated April 28, 1977, affirmed the decision of the Appeals Tribunal. The appellants then appealed to the Circuit Court of Kanawha County which, by order entered January 3, 1980, affirmed the judgment of the Appeals Tribunal and of the Board of Review. It is from that order that this appeal is taken.

The purpose of our unemployment compensation system is "to provide reasonable and effective means for the promotion of social and economic security by reducing as far as practicable the hazards of unemployment." W.Va. Code § 21A-1-1 (1978 Replacement Vol.); *Homer Laughlin China Co. v. Hix*, 128 W.Va. 613, 37 S.E.2d 649 (1946). The statute is not intended, however, to apply to those who "willfully contributed to the cause of their own unemployment." *Board of Review v. Hix*, 126 W.Va. 538, 541, 29 S.E.2d 618, 619 (1944). Rather, the intent of the act is to relieve those individuals who are able and willing to work but who, through no fault of their own, are unable to find suitable employment, of some of the anxieties and risks attendant to unemployment. *Board of Review v. Hix, supra; Miners in General Group v. Hix*, 123 W.Va. 637, 17 S.E.2d 810 (1941). *See also Lackey v. Celebreeze*, 349 F.2d 76 (4th Cir. 1965); *London v. Board of Review*, 161 W.Va. 575, 244 S.E.2d 331 (1978).

In order to avail himself of unemployment compensation benefits, a claimant must first show that he is eligible for benefits and is not disqualified from receiving them under our Unemployment Compensation Law, W.Va. Code § 21A-1-1 *et seq.* Among other things, a claimant for benefits must show that "[h]e is able to work and is available for full-time work for which he is fitted by prior training or experience ...." W.Va. Code § 21A-6-1(3) [1963].[2] In addition, in order to be eligible to receive benefits under the statute, the claimant must show that he is either totally or partially unemployed for that period for which he is claiming benefits. *Pickens v. Kinder*, 155 W.Va. 121, 181 S.E.2d 469 (1971). Total and partial unemployment is defined in W.Va. Code § 21A-1-3 [1976]:

"Total and partial unemployment" means:

(1) An individual shall be deemed totally unemployed in any week in which such individual is separated from employment to an employing unit and during which he performs no services and with respect to which no wages are payable to him.

(2) An individual who has not been separated from employment shall be deemed to be partially unemployed in any week in which due to lack of work he performs no services and with respect to which no wages are payable to him, or in any week in which due to lack of full-time work wages payable to him are less than his weekly benefit amount plus fifteen dollars.[3]

"Separated from employment" means "the total severance whether by quitting, discharge or otherwise, of the employer-employee relationship." *Id.* The circuit court found that the appellants were neither totally nor partially unemployed, nor were they available for full-time work by virtue of their participation in the labor dispute and that they were therefore ineligible to receive benefits under the

---

[2] This provision was amended by the legislature in 1979 to include the additional requirement that the claimant "is doing that which a reasonably prudent person in his circumstances would do in seeking work." W.Va. Code § 21A-6-1(3) (1979 Cum. Supp.)

[3] This provision was modified slightly by the legislature in 1978 and 1979.

statute. The circuit court also found that the appellants were statutorily disqualified from receiving benefits by virtue of W.Va. Code § 21A-6-3 [1976], which provides in pertinent part:

"Upon determination of the facts by the Commissioner, an individual shall be disqualified for benefits:

\* \* \*

(4) For a week in which his total or partial unemployment is *due to a stoppage of work which exists because of a labor dispute* at the factory, establishment or other premises at which he was last employed unless the Commissioner is satisfied that he was not (one) participating, financing or directly interested in such dispute, and (two) did not belong to a grade or class of workers who were participating, financing, or directly interested in the *labor dispute which resulted in the stoppage of work.* . . . [emphasis added].

The ultimate question for our determination is whether the circuit court erred in finding that the appellants were unemployed during the week of August 2, 1976, as the result of a work stoppage due to a labor dispute. The record clearly indicates that the stoppage of work at the Federal No. 1 Mine during the week of August 2, 1976, was the result of fire damage to the mine's communication system. The parties admit and agree that Eastern ordered the Federal No. 1 Mine to cease operations in order to perform the necessary repairs to render the communications system operational, in compliance with state law.[4] It is undisputed that Eastern announced on August 2, 1976, that no work was available at the Federal No. 1 Mine and that with the exception of the repair work being performed to restore the communications system, work continued to be unavailable at the mine until August 9, 1976.

There is no evidence on the record that the stoppage of work at the Federal No. 1 Mine during the period from August 2, 1976 to August 9, 1976 was the result of a labor dispute. Indeed, all the evidence indicates that the work

---

[4] W.Va. Code § 22-2-42 [1971].

stoppage was the direct result of the fire damage to the communications system, an occurrence totally unrelated to and independent of the wide-spread labor dispute then in progress.

In view of these uncontested facts, it is clear that the circuit court erred in finding that the appellants were unemployed due to a stoppage of work resulting from their participation in a labor dispute. Our reversal of the circuit court's finding on this issue is sufficient, in and of itself, to warrant reversal of the circuit court's conclusion that the appellants were disqualified from receiving benefits. The language of W.Va. Code § 21A-6-3(4), as quoted above, is clear and unambiguous. The statute operates to disqualify from receiving unemployment compensation benefits those claimants whose unemployment is due to a stoppage of work caused by a labor dispute. By its terms, the statute has no application to claimants whose unemployment results from a stoppage of work caused by some other event or occurrence. Thus, where a labor dispute is in progress at the employer's premises and a stoppage of work occurs which is shown to be the result of an occurrence or event independent of and unrelated to the labor dispute, employees who are totally or partially unemployed by virtue of the stoppage of work are not disqualified from receiving benefits under W.Va. Code § 21A-6-3(4). As all the evidence on the record indicates that the stoppage of work which resulted in the appellant's unemployment was the result of fire damage to the mine's communications system, an occurrence independent of and unrelated to the labor dispute, we conclude that the circuit court was plainly wrong in finding that the appellants were disqualified for unemployment compensation benefits for the period from August 2, 1976 to August 9, 1976.

The question remains, however, whether the appellants were eligible to receive benefits. Claimants may fall outside the statutory disqualification provision and still be ineligible to receive benefits. Eastern maintains that since the appellants' unemployment began with the appearance of roving pickets on July 26, 1976, and did not end until the resolution of the widespread labor dispute on August 12,

1976, the appellants were at all times during that period participants in the labor dispute and therefore ineligible to receive benefits.[5] The circuit court upheld the findings of the Appeals Tribunal and of the Board of Review in

[5] Although there is no clear law in West Virginia as to whether the refusal of non-striking employees to cross picket lines to report for work constitutes "participation" in a labor dispute, other jurisdictions have held that the voluntary refusal of non-striking employees to cross peaceful picket lines at their place of employment constitutes participation in a labor dispute for purposes of determining the statutory eligibility or disqualification of claimants seeking unemployment compensation benefits. *Fort Smith Chair Co. v. Laney*, 238 Ark.636, 383 S.W.2d 666 (1964); *Mancini v. Adm'r Unemployment Compensation Act*, 24 Conn. Super. 461, 194 A.2d 540 (1963); *Baldassaris v. Egan*, 135 Conn. 695, 68 A.2d 120 (1949); *Washington Post Co. v. District Unemployment Compensation Dept.*, 379 A.2d 694 (D.C. App. 1977); *American Brake Shoe Co. v. Annunzio*, 405 Ill. 44, 90 N.E.2d 83 (1950); *Achenbach v. Board of Review*, 242 Ind. 655, 179 N.E.2d 873 (1962); *Baltimore Typographical Union No. 12 v. Hearst Corp.*, 246 Md. 308, 228 A.2d 410 (1967); *Basso v. News Syndicate Co., Inc.*, 90 N.J. Super. 150, 216 A.2d 597 (1966). *See generally* Annot., 62 A.L.R.3d 380. Where the claimant's refusal to cross picket lines is based on a reasonable fear of violence or bodily harm, his failure to report for work is involuntary and he is not disqualified or ineligible for benefits. *Ex Parte McCleney*, 286 Ala. 288, 239 So.2d 311 (1970); *Washington Post Co. v. District Unemployment Compensation Dept., supra*; *Meyer v. Industrial Comm.*, 240 Mo. App. 1022, 223 S.W.2d 835 (1949); *Franke v. Unemployment Board of Review*, 166 Pa. Super. 251, 70 A.2d 461 (1950); *Texas Co. v. Texas Employment Comm.*, 261 S.W.2d 178 (Tex. Civ. App. 1953). In the absence of proof to the contrary, courts must indulge the presumption that a picket line is maintained and conducted in a peaceful, orderly, law-abiding manner. *Ex Parte McCleney, supra*; *Steamship Trade Ass'n of Baltimore v. Davis*, 190 Md. 215, 57 A.2d 818 (1948); *Meyer v. Industrial Comm., supra*. While it is not necessary that claimants actually experience bodily harm or violence in attempting to cross the picket line to come within the exception, *Shell Oil Co. v. Cummings*, 7 Ill.2d 329, 131 N.E.2d 64 (1955); *Achenbach v. Review Board, supra*; *Wilson v. Employment Security Comm.*, 74 N.M. 3, 389 P.2d 855 (1964); *Blankenship v. Board of Review*, 486 P.2d 718 (Okla. 1971), the fear of violence must be real and not nebulous, and neither the mere presence of pickets nor the mere statements of claimants of their apprehension of violence to their persons is sufficient to show their inclusion within the exception, absent other evidence to support a reasonable apprehension of violence. *Speagle v. United States Steel Corp.*, 268 Ala. 694, 105 So.2d 717 (1958); *Steamship Trade Ann's v. Davis, supra*; *McGann v. Unemployment Compensation Board of Review*, 163 Pa. Super. 379, 62 A.2d 87 (1948).

concluding that the appellants were ineligible to receive benefits for any time between July 26, 1976 and August 12, 1976, in that their participation in the labor dispute made them unavailable for work and did not result in total or partial unemployment.

In concluding that the appellants were ineligible for unemployment compensation benefits in that they were neither totally nor partially unemployed, the circuit court relied on the case of *Pickens v. Kinder*, 155 W.Va. 121, 181 S.E.2d (1971). After reviewing the statutory definitions of total and partial unemployment, the court in *Pickens* first stated that

> [e]mployees who go on strike do not sever their employer-employee relationship, and such relationship continues during the entire time they are on strike and until such time as they quit or obtain employment elsewhere, and striking employees who intend to return to their jobs are not totally unemployed where there is no showing of a separation from employment. Syl pt. 3, *Pickens v. Kinder, supra.*

This rule appears to be applicable to the case at hand, and there is no contention by the appellants that they were totally unemployed during the period in question. However, *Pickens* also stands for the proposition that

> [w]here employees voluntary go on strike but work is available at the employer's plant, such employees are not partially unemployed because a strike does not create a *lack of work where work is available to the strikers during the strike.* Syl. pt. 4, *Id.* (Emphasis supplied in part).

These principles appear to be the basis for the circuit court's conclusion that the appellants were neither totally nor partially unemployed. It is clear, however, that *Pickens* involved a distinctly different factual situation. There, the employer's plant was required to curtail its operations as a result of a labor dispute but remained open and producing, with work available to any employee who chose to return to work. Here, however, it is uncontradicted that there was no work available at the employer's mining

operations and that the lack of such available work was due to causes other than a labor dispute. *Pickens* is clearly inapplicable to the case at bar and the circuit court was clearly wrong in relying thereon to find that the appellants were neither totally nor partially unemployed, so as to be eligible for benefits under the statute.

The appellants' final assignment of error is that the circuit court was plainly wrong in finding that they were "unavailable for full-time work" during the period of the mine shutdown and therefore ineligible to receive benefits under the provisions of W.Va. Code § 21A-1-1 [1963]. We have held that the "available for work" requirement simply means that the unemployed person is "genuinely attached to the labor market". *London v. Board of Review, supra; Davis v. Hix,* 140 W. Va. 398, 84 S.E.2d 404 (1954). He must be willing to accept any suitable work which may be offered to him, without attaching thereto restrictions or conditions not usual or customary in that occupation but which he may desire because of his particular needs or circumstances. *Unemployment Comp. Comm. v. Tomko,* 192 Va. 463, 65 S.E.2d 524 (1951). Thus, it is generally held that an employee who voluntarily abandons or refuses available work because of his participation in a labor dispute is not "available for work" within the meaning of a statutory provision setting forth eligibility requirements for unemployment benefits. *Monsanto Chemical Co. v. Thornbrough,* 229 Ark. 362, 314 S.W.2d 493 (1958); *Mancini v. Administrator, Unemployment Compensation Act,* 24 Conn. Super. 461, 194 A.2d 540 (1963); *Tucker v. American Smelting and Refining Co.,* 189 Md. 250, 55 A.2d 692 (1947); *Producers Produce Co. v. Industrial Comm.,* 365 Mo. 996, 291 S.W.2d 166 (1956); *Board of Review v. Mid-Continent Petroleum Corp.,* 193 Okla. 36, 141 P.2d 69 (1943); *Adams v. American Lava Corp.,* 188 Tenn. 69, 216 S.W.2d 728 (1949). *See generally* 76 Am.Jur.2d *Unemployment Compensation* § 77; Anno., 28 A.L.R.2d 293 § 2. It has also been held, however, that where the claimant's unemployment is originally caused by a lack of work and a labor dispute develops during the continuance of the unavailability of work, the claimant is entitled to benefits until work becomes

available and he refuses to accept it. *Fort Smith Chair Co. v. Laney*, 238 Ark. 636, 383 S.W.2d 666 (1964); *Be-Mac Transportation Co., Inc. v. Grabiec*, 20 Ill.App.3d 345, 314 N.E.2d 242 (1974); *Muncie Foundry Div., etc. v. Review Board*, 114 Ind.App. 475, 51 N.E.2d 891 (1943); *Jones and Laughlin Steel Corp. v. Unemployment Board of Review*, 202 Pa. Super. 209, 195 A.2d 922 (1963).

In this case, we may assume that the appellants' initial unemployment was caused by their voluntary refusal to cross picket lines to report for work. Pickets appeared at the Federal No. 1 mine on July 26, 1976 at the midnight shift and the appellants refused to cross the picket lines to report for work at that time. No evidence was offered of any threat of violence to the appellants by the pickets. The appellants continued to honor picket lines until the day shift on August 2, 1976, at which time no pickets appeared and a number of the appellants reported for work. During that shift, fire damage to the communications system shut down mine operations until August 9, 1976, at the 12:01 a.m. shift, when Eastern announced that work was available.

Eastern would have us hold that because the appellants honored picket lines and did not report for work during the weeks preceeding and following the period of the work stoppage involved here, they are presumed to have been unavailable for full-time work during the entire three-week period. The appellees would have us assume that pickets would have been present during the week of August 2, 1976, had the mine been in operation and that the appellants would have refused to cross the picket lines.

It is clear from the record, however, that no pickets appeared on August 2, 1976, at the day shift and that several of the appellants did report for work. There is no evidence to indicate that pickets would have been present during the period of the mine shut down. It is equally clear that the reason the appellants did not report for work during the period from August 2, 1976 to August 9, 1976, was that Eastern had announced that there was no work available at the Federal No. 1 mine at that time. There was no evidence that the appellants refused or would have refused without good cause to accept work when it was

offered to them. To be sure, the appellants had voted to attempt to return to work *unless* pickets were present, which would indicate an intent to place restrictions on their acceptance of work and make them unavailable for employment. However, no pickets were present on the morning of August 2, 1976, and by reporting for work on that day, the appellants indicated their willingness to accept available employment at the Federal No. 1 mine despite the fact that other mines in the area were being affected by the labor dispute. Their actions cast doubt upon their support of the strike. *See Copen v. Hix,* 130 W.Va. 343, 43 S.E.2d 382 (1947).

We do not think the record here shows that the appellants were unavailable for work within the meaning of the statutory eligibility provision. The existence of a possibility or probability that employees would not have reported to work had work been available and had pickets been presented at the employer's premises is insufficient to support a finding that such employees were unavailable for work and therefore ineligible for unemployment compensation benefits, where the employees affirmatively show their willingness to accept available employment despite the existence of a labor dispute affecting other employers. To hold otherwise would be to indulge in speculation and to create a presumption thereon in contravention of the principle that the Unemployment Compensation Law is to be liberally construed. *London v. Board of Review,* 161 W.Va. 575, 244 S.E.2d 331 (1978); *Cumberland & Allegheny Gas Co. v. Hatcher,* 147 W.Va. 630, 130 S.E.2d 115 (1963); *Bennett v. Hix,* 139 W.Va. 75, 79 S.E.2d 114 (1953). We conclude therefore that the circuit court was plainly wrong in finding that the appellants were ineligible for unemployment compensation benefits during the period claimed on the ground that they were unavailable for full-time work.

For the reasons stated above, we conclude that the Circuit Court of Kanawha County committed plain error in affirming the decisions of the Appeals Tribunal and the Board of Review and in determining that the appellants were ineligible for and disqualified from unemployment

compensation benefits. We therefore reverse the ruling of the circuit court and remand the case to the Circuit Court of Kanawha County with directions to order the Department of Employment Security to institute further proceedings in accordance with the principles enunciated herein.

*Reversed and remanded with directions.*