KUNJAMMA THOMAS

*v.*

PHYLLIS J. RUTLEDGE, CLERK OF THE CIRCUIT COURT OF KANAWHA COUNTY, AND THE BOARD OF REVIEW, WEST VIRGINIA DEPARTMENT OF EMPLOYMENT SECURITY

(No. 14961)

Decided July 13, 1981

*Kathleen G. Dolan* for petitioner.

*Odell Huffman* for respondent Princeton Community Hospital.

McGRAW, JUSTICE:

This is an appeal from a final order of the Circuit Court of Kanawha County which affirmed the decision of the Board of Review of the West Virginia Department of Employment Security denying the appellant, Kunjamma Thomas, unemployment compensation benefits. The appellant contends that W. Va. Code § 21A-6-3(6) (1980 Cum. Supp.), which indefinitely disqualifies those individuals who voluntarily quit work to perform a marital duty, from receiving benefits, is unconstitutional in that it violates the state and federal constitutional guarantees of due process and equal protection of the laws. We find merit in the appellant's contention and we reverse the judgment of the circuit court.

The facts of the case are not in dispute. The appellant was employed as a graduate nurse at Princeton Community Hospital from May 19, 1974 until July 31, 1978, at which time she quit her job in order to accompany her husband and two children to Greensburg, Pennsylvania. Mr. Thomas had been unable to find work in the Princeton area and had decided to move to a more populous area where both he and his wife could find jobs. Upon moving to Pennsylvania, however, the appellant discovered that she could not obtain employment as a registered nurse without first acquiring a nursing license in that state. On October 3, 1978, the appellant filed an interstate claim for unemployment compensation benefits with the West Virginia Department of Employment Security. The Deputy of the Interstate Unit at Charleston rendered a decision on October 30, 1978, finding that the appellant was available for full-time work and, thus, eligible to receive benefits as of October 1, 1978, but denying benefits on the ground that the appellant had voluntarily quit work to perform a marital duty and was therefore disqualified under W.Va. Code § 21A-6-3(6) until she had returned to covered employment and had been employed for at least thirty working days.

The appellant appealed the Deputy's decision and an evidentiary hearing was held at Greensburg, Pennsylvania on December 8, 1978. A cassette tape recording of the

hearing, accompanied by a letter dated December 11, 1978, was sent to the Board of Review of the West Virginia Department of Employment Security, but by order dated December 18, 1978, the appeal was rejected as not having been filed within the statutory time period. The appellant protested this ruling, explaining that she had not received a copy of the Deputy's decision, possibly because it had been mailed to the wrong address, and therefore had not been informed of her appeal rights. It also appeared that there was some delay by the Pennsylvania Bureau of Employment Security in informing the appellant of the Deputy's decision on her claim because of the appellant's difficulty in speaking the English language. On January 15, 1979, the Board of Review rescinded the appeal rejection order and reopened the appellant's case.

By letter dated March 19, 1979, counsel for the appellant was notified that the tape recording of the appellant's testimony at the hearing held on December 8, 1978, was unclear and could not be transcribed, and that the Board of Review had requested the State of Pennsylvania to reschedule a hearing for the appellant. Hearings were held for the employer at Bluefield on April 9, 1979, and for the appellant at Greensburg, Pennsylvania on April 16, 1979, The appellant testified that she was attempting to qualify for her Pennsylvania nursing license, that she had unsuccessfully applied for various jobs at hospitals, nursing homes, and other patient care facilities at a rate of approximately five per week since she had moved to Greensburg and that since October 1, 1978, she had reported every week to the local unemployment office. She stated that she quit her job in West Virginia to accompany her husband to Pennsylvania because she and her husband were not financially able to support two separate households. The employer's testimony consisted only of a statement that the appellant had been employed at the Princeton Community Hospital from May 19, 1974 to June 31, 1978, and a reading of the appellant's letter of resignation indicating that she was leaving work to relocate with her husband.

After considering the testimony of the appellant and of the employer, the West Virginia hearing examiner found that the appellant had voluntarily quit work to perform a marital duty and affirmed the decision of the Deputy by order dated April 25, 1979. The Board of Review adopted the findings of the hearing examiner and affirmed the denial of benefits in a written order dated August 30, 1979. The appellant appealed to the Circuit Court of Kanawha County, alleging among other things that the statutory disqualification provision was unconstitutional. By order entered May 22, 1980, the circuit court adopted the Board's conclusion that

> [t]he claimant is held to be eligible as of October 1, 1978 as claimant is available for fulltime work but disqualified from July 30, 1978 to indefinite as claimant quit employment to perform a marital duty and, further, the claimant is disqualified until she has been employed in covered employment at least thirty working days.

The lower court affirmed the decision of the Board of Review and ordered the petition for review dismissed with prejudice. The appellant then filed this appeal.

It is undisputed that the only ground for the denial of the appellant's claim for unemployment compensation benefits was that the appellant voluntarily quit her job to perform a marital duty. The only issue before us is whether the statute upon which the Deputy, the hearing examiner, the Board of Review and the circuit court relied in denying the appellant's claim, W. Va. Code § 21A-6-3(6), is unconstitutional. The appellant asserts that because the statutory disqualification indefinitely denies benefits to individuals who voluntarily leave their jobs to perform a marital duty until such time as they have actually returned to covered employment for a period of thirty days, but permits individuals who voluntarily quit work for other reasons or for no reason at all to receive benefits after a waiting period of only seven weeks, it violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and the guarantee of equal protection of the laws embodied in article III, § 10 of our state constitution.

The appellant also maintains that the blanket denial of benefits for an indefinite period of time constitutes arbitrary and irrational legislative action in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States and of article III, § 10 of the West Virginia Constitution.

Under the unemployment compensation statute in effect at the time the appellant became unemployed, an individual became eligible for benefits if the commissioner found that:

(1) He has registered for work at and thereafter and continues to report at an employment office in accordance with the regulations of the commissioner.

(2) He has made a claim for benefits in accordance with the provisions of article seven [§ 21A-7-1 et seq.] of this chapter.

(3) He is able to work and is available for full-time work for which he is fitted by prior training or experience.

(4) He has been totally unemployed during his benefit year for a waiting period of one week prior to the week for which he claims benefits for total unemployment.

(5) He has within his base period earned wages for employment equal to not less than seven hundred dollars.

W. Va. Code § 21A-6-1 [1963].[1]

Otherwise eligible claimants may be denied benefits, however, if the commissioner found that they fell within any of the statutory disqualifications enumerated in W. Va. Code § 21A-6-3 [1978]. Two of those disqualification provisions are germane to the issue before us. Subsection (1) of the statute disqualifies an individual from receiving benefits

[f]or the week in which he left his most recent work voluntarily without good cause involving

---

[1] This provision was subsequently amended in 1979 and in 1981. *See* 1979 W. Va. Acts ch. 115; 1981 W. Va. Acts ch. ____. These amendments bear no significant relationship to the issue presented in this case.

fault on the part of the employer and the six weeks immediately following such week. Such disqualification shall carry a reduction in the maximum benefit amount equal to six times the individual's weekly benefit rate. However, if the claimant returns to work in covered employment during his benefit year, the maximum benefit amount shall be increased by the amount of decrease imposed under the disqualification.

W. Va. Code § 21A-6-3(1)
[1978].

The disqualification provision on which the Deputy based his decision to deny benefits to the appellant provides for disqualification

[f]or the week in which an individual has voluntarily quit employment to marry or to perform any marital, parental or family duty, or to attend to his or her personal business or affairs and until the individual returns to covered employment and has been employed in covered employment at least thirty working days.

W. Va. Code § 21A-6-3(6) (1980 Cum. Supp.).

Clearly, the statute treats those individuals who voluntarily quit work to perform a marital, parental or family duty, the so-called "domestic quit" or "marital quit" claimants, differently and more harshly than individuals who voluntarily leave employment for other reasons or for no reason at all. The former must actually become re-employed for a period of thirty days before the disqualification is removed, while the latter need only wait a period of seven weeks to become qualified to receive benefits.[2] We are called upon to decide whether the

---

[2] W. Va. Code § 21A-6-3(1) was amended at the 1981 Regular Session of the West Virginia Legislature to provide for disqualification of an individual

[f]or the week in which he left his most recent work voluntarily without good cause involving fault on the part of the employer and *until the individual returns to covered employment and has been employed in covered employment at least thirty working days* . . . . (Emphasis added).

separate legislative classification of domestic quit claimants as a group deserving of different and harsher treatment than other voluntary quit claimants with respect to their entitlement to unemployment compensation benefits is so unreasonable, arbitrary and irrational as to violate the federal and state constitutional guarantees of due process and equal protection of the laws.

We start with a strong presumption in favor of the constitutionality of legislative action. Statutory classifications are presumed to be reasonable and appropriate and one who challenges the constitutionality of a classification has the burden of proving that it is essentially arbitrary and unreasonable. *United Fuel Gas Co. v. Battle,* 153 W. Va. 222, 167 S.E.2d 890, *cert. denied* 396 U.S. 116, 90 S.Ct. 398, 24 L.Ed.2d 309 (1969); *State ex rel. Heck's Inc. v. Gates,* 149 W. Va. 421, 141 S.E.2d 369 (1965).

> A state by its legislature may make reasonable classifications in enacting statutes provided the classifications are based on some real and substantial relation to the objects sought to be accomplished by the legislation, and a person who assails any such classification has the burden of showing that is essentially arbitrary and unreasonable.

Syl. pt. 5, *United Fuel Gas Co. v. Battle, supra.*

In the area of social welfare and economic benefits legislation, such as our unemployment compensation law,

---

Enrolled Committee Substitute for H.B. 1255, 1st Reg. Session, 65th W. Va. Legislature (1981). The obvious effect of this amendment, which became effective on April 8, 1981, was to remove the distinction between domestic quit claimants and other voluntary quit claimants which is at issue here. However, since the appellant's rights are to be determined under the statute in effect at the time she became eligible for benefits, the subsequent amendment of the statute has no bearing on our decision. We merely note the legislative action for future reference.

The provisions of W.Va. Code § 21A-6-3(6), providing for the statutory disqualification of domestic quit claimants were not altered by the 1981 amendment.

a classification which is not inherently suspect[3] will satisfy the guarantee of equal protection of the laws if it bears some rational relation to the legitimate state purpose of the act. *Richardson v. Belcher*, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). "[T]he court must consider whether the classification is a rational one based on social, economic, historic or geographical factors; whether the classification bears a reasonable relationship to a proper governmental purpose; and whether all persons within the classes established are treated equally." *Cimino v. Board of Education of Marion County*, 158 W.Va. 267, 210 S.E.2d 485, 490 (1974), cited in *Shackleford v. Catlett*, 161 W.Va. 568, 244 S.E.2d 327, 330 (1978); *State ex rel. Picirrillo v. City of Follansbee*, 160 W.Va. 329, 233 S.E.2d 419 (1977). The same level of scrutiny is applied when a statutory classification is challenged as violating the guarantee of due process, which prohibits "arbitrary legislation, demanding that it shall not be unreasonable, arbitrary or capricious and that all the requirements therein shall have a real and substantial relation to the purpose of the act." *O'Neil v. City of Parkersburg*, 160 W.Va. 694, 237 S.E.2d 504, 509 (1977). If there is some rational justification in the legislative purpose of the act, it will save the classification from constitutional attack. *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

We can perceive no rational basis for imposing more rigorous qualifications on entitlement to benefits on those who voluntarily quit work to perform a marital duty than on other claimants who voluntarily leave their employment. As we have recently noted, the purpose of the unemployment compensation law is "to relieve those individuals who are able and willing to work but who,

---

[3] Classifications which are inherently suspect are those based upon race, alienage, national origin, poverty or sex. Such classifications are subjected to a much stricter standard of review and may be upheld as constitutional only if the State demonstrates that they further a compelling state interest. For a discussion of the two-tiered standard of review adopted by this Court, as well as our rejection of the federal "middle-tier" approach in cases of classifications based on sex, *see Peters v. Narick*, 165 W.Va. 622, 270 S.E.2d 760 (1980).

through no fault of their own, are unable to find suitable employment, of some of the anxieties and risks attendant to unemployment." *Hill v. Board of Review,* ___ W.Va. ___, 276 S.E.2d 805, 807-08 (1981). We do not question that the State has a legitimate interest in limiting entitlement to unemployment compensation benefits to those persons who are genuinely attached to the labor market. The appellees contend that the marital quit disqualification rationally furthers this legislative purpose because persons who voluntarily leave their employment to perform a marital duty do so with the intention to withdraw permanently from the labor force. The appellees assert that in furtherance of the purpose of the unemployment compensation act to exclude such persons from the benefits program, the Legislature may rationally require marital quit claimants to prove their willingness to work and availability for employment by actually becoming re-employed for a period of thirty days.

Clearly, the rationale advanced by the appellees, which we view as the only possible justification for the classification, relies on an undisclosed irrebuttable presumption that marital quit claimants have left the labor market permanently. Conclusive or irrebuttable presumptions are not favored in the law and have been held to violate due process when they are not necessarily or universally true and when the State has alternative means of arriving at the crucial factual determination. *Turner v. Department of Employment Security,* 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975); *Cleveland Board of Education v. La Fleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (physical incapacity of a woman who is pregnant or has just borne a child to work); *United States Department of Agriculture v. Murry,* 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973) (ineligibility of taxpayer's dependents to receive food stamps); *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (nonresidence for state university tuition purposes); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (unfitness of father to have custody of illegitimate child); *Carrington v. Rash,* 380 U.S.

89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965) (nonresidence of a serviceman for voting purposes).

It seems obvious to us that a conclusive presumption that persons who quit their jobs to perform a marital obligation have permanently withdrawn from the work force is neither necessarily nor universally true. In today's complex and highly mobile society it is not unusual to find a marital relationship in which both spouses work full-time, either for economic reasons or for personal fulfillment. Quite often one spouse is transferred or must relocate for other reasons to a different city or state and the other spouse leaves his or her job to follow, with the intention of finding other work in the area of the new marital domicile. While at one time it might have been reasonable to assume that spouses who quit work to perform a marital duty, particularly women, did so with the intention not to return to full-time employment, such a presumption today is not a natural conclusion to be drawn from our knowledge of human nature and affairs.

As the facts of this case demonstrate, the availability of a person who quits a job for marital reasons for full-time work is very much a matter of individual preference and circumstance and should be subject to an individualized determination. The appellant here testified that she registered with the local unemployment office in Pennsylvania and reported there on a weekly basis. She applied for positions at patient care facilities as a nurse at a rate of approximately five per week, but was refused work because she did not have a Pennsylvania nursing license. At the time of the hearing, she was attempting to qualify for such a license. She also testified that she had applied for other jobs besides those in the nursing field and was willing to accept other employment if it was offered, but was often refused work because she did not have a car. She appears to have made a conscientious effort to find work in Pennsylvania. Indeed, at all phases of the proceedings below, the appellant was found to have been in fact "available for full-time work" and, thus, eligible for benefits for the entire period during which she was conclusively presumed to have permanently withdrawn

from the labor market. Her disqualification was not related to her actual circumstances, but solely to the reason she gave for leaving her job.

We will concede that there are large numbers of persons who quit work for marital or domestic reasons and who do not intend to return to full-time employment. It cannot be doubted that the State has a legitimate interest in denying unemployment compensation benefits to such persons in furtherance of the purposes of the unemployment compensation law. The question, however, is whether the State has chosen a means for effecting its goals which bears a rational relationship to that purpose. The blanket disqualification of all marital quit claimants does not rationally further the State's interest in limiting benefits to those who are genuinely attached to the labor market for two reasons. First, it does not treat persons similarly situated equally. Not only does the statutory disqualification deny benefits to those who actually do remove themselves permanently from the labor market, but it also denies benefits to marital quit claimants who are genuinely attached to the labor market and who would otherwise be eligible for benefits. The discrimination between these two distinctly different groups of claimants resulting from their placement in the same category bears no rational relation to the purpose of the unemployment compensation act.

More importantly, the disqualification provision places a greater burden on marital quit claimants to show their availability for work than it does on other voluntary quit claimants. Those who voluntarily quit work for non-domestic related reasons and come under the provisions of W.Va. Code §21A-6-3(1) need only show their eligibility after a period of seven weeks to be entitled to benefits. Marital quit claimants, on the other hand, must actually become re-employed to demonstrate their entitlement to benefits. While the imposition of a greater burden of proof may be justified with respect to marital quit claimants who have actually withdrawn from the labor market, there is no rational reason for singling out for harsher treatment those marital quit claimants who are in fact available for

full-time work. Classification of all marital quit claimants under a conclusive umbrella of disqualification that can be removed only by a showing of re-employment without affording such persons the individualized treatment accorded other voluntary quit claimants is precisely the sort of patently arbitrary and irrational classification prohibited by the equal protection and due process provisions of our federal and state constitutions.

The appellees assert that our determination of this issue will result in greater instances of fraud based on subjective determinations by marital quit claimants that they have once again become available for work. We see no greater opportunity for fraudulent claims in the area of the marital quit disqualification than in any other area of benefits disqualification. Marital quit claimants, like any other claimant for benefits, must show to the satisfaction of the commissioner that they are in fact eligible to receive benefits. They must meet all of the eligibility requirements set forth in W.Va. Code § 21A-6-1, including a demonstration that they are available for full-time work. This is the initial step taken by the Department of Employment Security in processing any claim for benefits and a claimant cannot prevail in his or her pursuit of benefits unless he or she can satisfy the commissioner, through objective evidence of intent or of past conduct, that he or she is genuinely attached to the labor market. The burden of proving eligibility is upon the claimant and the hearing examiner is the judge of the veracity of the claimant and the weight of the evidence. The administrative mechanism for such determinations already exists and is utilized not only in non-domestic related voluntary quit cases, but, as the record shows, was used in the appellant's proceeding below. Requiring domestic quit claimants to show their availability for work in the same manner as other voluntary quit claimants would provide no greater opportunity for fraudulent claims than already exists and would impose no significant burden on the existing hearing and appeals procedures. The need for individualized determination of a claimant's entitlement to benefits in furtherance of the purpose of the compensation law clearly outweighs the

slight administrative convenience in treating an entire group of claimants more harshly under a conclusive presumption of ineligibility. The State's interest here simply does not justify the arbitrary denial to marital quit claimants of the individualized determination of availability for full-time work afforded other voluntary quit claimants, and the failure to provide such an individualized determination violates our concepts of due process and equal protection of the laws.

We do not think that our resolution of this issue requires us to eliminate the marital quit disqualification from the unemployment compensation law completely. Our policy is to uphold legislative intent rather than to defeat it, and if there is any reasonable way to construe legislation as constitutional, we will so construe it. *State ex rel. City of Charleston v. Coghill*, 156 W.Va. 877, 207 S.E.2d 113 (1973); *Farley v. Graney*, 146 W.Va. 22, 119 S.E.2d 833 (1961). Both parties agree, and we concur, that the only justifiable grounds for the disparate treatment of marital quit claimants and other voluntary quit claimants is to require those who have permanently withdrawn from the labor market to demonstrate their availability for work by actually obtaining new employment. As we have already noted, we think the Legislature can require such a showing from such claimants. It simply cannot determine that all individuals who quit for marital reasons fall within that class by means of an irrebuttable presumption of unavailability for work. The obvious solution is to read the statute so as to create a rebuttable presumption of disqualification which a claimant may overcome by proof of his or her intent to remain in the labor force and available for full-time work. Since such a showing is already required for all claimants for unemployment compensation benefits, no hardship is worked on either the individual claimants or upon the administrative mechanism. Those who demonstrate their availability for work would be treated as other voluntary quit claimants and would become entitled to the reduced benefits afforded under W. Va. Code § 21A-6-3(1). Those claimants who cannot show that they are genuinely attached to the labor market would be disqualified from

benefits under W.Va. Code § 21A-6-3(6) until they have actually returned to covered employment for a period of thirty days.

We conclude, therefore, that W.Va. Code § 21A-6-3(6) (1980 Cum. Supp.), which disqualifies those individuals who voluntarily leave their employment to perform a marital or domestic duty from receiving unemployment compensation benefits until such a time as they have returned to covered employment for a period of thirty working days, creates a rebuttable presumption that such persons are unavailable for work. Upon a showing by claimants falling within the statutory disqualification that they are in fact available for full-time work and meet all other eligibility requirements, "marital quit" claimants shall be entitled to the same benefits afforded other voluntary quit claimants under W.Va. Code § 21A-6-3(1) [1978]. As the appellant was found to have been available for work and otherwise eligible for benefits by the commissioner, the denial of her claim for unemployment compensation benefits was error. We reverse the judgment of the Circuit Court of Kanawha County which affirmed the final order of the Board of Review, and we remand the cause to the Commissioner of the Department of Employment Security with instructions to enter an order awarding the appellant the benefits to which she is entitled in accordance with the principles enunciated in this opinion.

*Reversed and remanded*
*with instructions.*

NEELY, JUSTICE *dissenting*:

I dissent on the grounds that statutory entitlements are uniformly arbitrary. Why can we all retire with full benefits at 65 but not at 64? Why is a person who voluntarily quits work disqualified for seven weeks rather than six or eight? These issues are political and must be addressed by the political and not the judicial process.

I am no more enamored of the legislative conclusion that "domestic quits" disqualify a beneficiary until he or she returns to full-time work than the majority. However, in 1972 I left the West Virginia Legislature to become a judge.

When I did that I gave up the legislating business for the judging business. There is no political conclusion of a legislature which is beyond judicial repeal by appeal to an equal protection argument.

Certainly a legislature can so discriminate against the politically powerless and in favor of the politically powerful in the construction of a benefits scheme as to legitimately call the legislation into question under traditional due process rules. This, however, is very far from such a case. Can we say that married women as a class constitute an insular minority devoid of political power? Can we say that those who quit voluntarily and are, therefore, disqualified for only seven weeks constitute a powerful political lobby distinct and apart from the insular minority of domestic quitters? Certainly not! In an inherently arbitrary scheme no one facet of the scheme is necessarily more arbitrary than another. Thus this case is an improper occasion for the judiciary to intervene in the active political process.