299 S.E.2d 13

**Daniel K. OYLER and Others**

v.

**Phyllis J. COLE, Clerk, etc., et al.**

No. 15433.

Supreme Court of Appeals of
West Virginia.

Dec. 10, 1982.

James M. Haviland & James B. McIntyre, McIntyre, Haviland & Jordan, Charleston, for petitioners.

Forrest H. Roles, Jackson, Kelly, Holt & O'Farrell, Charleston, for respondents.

John M. Kuykendall & James V. Coggin, Jr., Weintraub, DeHart, Robinson, Coggin & Trotter, Memphis, Tenn., for B.F. Shaw.

## PER CURIAM:

The sixty nine petitioners in this action were members of two craft unions employed by Benjamin F. Shaw Company,[1] hereinafter referred to as B.F. Shaw. Petitioners were working on a construction project in Washington, West Virginia, when, on June 1, 1979, the Laborers' Union went on strike and established a picket line at the construction site. Petitioners did not work from June 1, 1979 until June 27, 1979 when the Laborers' picket line was removed, and they claim that they are eligible and qualified for unemployment benefits for this period. We agree, and reverse and remand.

Petitioners applied for unemployment benefits and their claim was referred to an appeal tribunal pursuant to *W. Va. Code*, 21A-7-4(c) (1972) and *W. Va. Code*, 21A-7-7 (1972).[2] The tribunal received evidence from both parties and, on June 19, 1980, the tribunal found that because petitioners did not cross the Laborers' picket line they were not "available for full time work for which [they were] reasonably fitted by prior training or experience." *W. Va. Code*, 21A-6-1 (1979). Since availability for work is a prerequisite for eligibility, petitioners were ruled ineligible.

They appealed this ruling to the board of review, as provided by *W. Va. Code*, 21A-7-9 (1972), and the board examined the record developed before the appeal tribunal. On November 12, 1980, the board ruled that the petitioners had established their availability for work and, hence, were eligible for benefits.

Pursuant to *W. Va. Code*, 21A-7-17 (1967) B.F. Shaw appealed the ruling of the board of Kanawha County Circuit Court. Upon consideration of the record developed below, the circuit court reversed the board of

review and affirmed the decision of the appeal tribunal denying petitioners' eligibility.

Petitioners sought certiorari in this Court as permitted under *W. Va. Code*, 21A-7-27 (1970), and certiorari was granted. The issue before us is the same one considered at each previous level in this proceeding: Were the petitioners available for work on B.F. Shaw's construction site from June 1 to June 27, 1979?

We note initially that the testimony in this case was remarkably sparse. Three witnesses testified for appellants, of whom only petitioner Oyler testified about the specific construction site which was the subject of the dispute. The other two witnesses for the petitioners were employed by affected union locals, but they offered no evidence about work at the particular site involved.

Lloyd Mace, business manager for Sheetmetal Workers Local 299 testified in general terms about the interdependency of the various crafts at a construction site. He was asked if the Sheetmetal Workers could have performed their work without the support of the striking Laborers. He replied, "[w]ell they couldn't function properly on account of it takes all the crafts to function whenever you're working on a construction project."

Petitioner Oyler testified regarding the interrelationship among crafts employed on a construction site as follows:

"Q. O.K. Is there any other reason why you didn't go to work?

A. Well if I had there was no other crafts there to work with. I have to have supporting crafts to work.

Q. Can you tell the judges, give the judges examples of what you mean by supporting crafts to help you work?

A. Well it takes your Operating Engineers to supply the air to run the tools

---

1. It appears from the record that petitioners were not all members of one craft union as suggested by language in the decision of the board of review, but rather that they were members of two craft unions, the Pipefitters and the Sheetmetal Workers.

2. *W. Va. Code*, 21A-7-7 was amended in 1981 to substitute the phrase "administrative law judges" for the word "examiners". The 1972 version of the statute is applicable to this case.

and to lift equipment and piping which we have to do on a day-to-day basis. Takes electricians to supply welding machine for lighting, whatever, to lighting, which is temporary. It takes Laborers, which put up the picket, sanitary conditions. Well just—you need supporting crafts to operate."

Only one witness testified for B.F. Shaw. Oscar Lard, a craft superintendent employed by B.F. Shaw Company, testified that work was available to petitioners at the site. In anticipation of a picket line, he stated that he had informed some B.F. Shaw employees that work would be available for non-striking crafts throughout any strike by a craft union.

In *Hill v. Board of Review,* 166 W.Va. 648, 276 S.E.2d 805 and *Kisamore v. Rutledge,* 166 W.Va. 675, 276 S.E.2d 821, both 1981 cases, we set forth the law applicable to the case *sub judice.* As we noted in *Kisamore* "the eligibility and disqualification provisions of the West Virginia Unemployment Compensation law constitute a two-step process to entitlement to unemployment compensation benefits." *Kisamore v. Rutledge,* 166 W.Va. at 680, 276 S.E.2d at 824. Both steps are important herein. Availability for work is a prerequisite to eligibility under *W.Va.Code,* 21A–6–1 (1979). Should eligibility be found, the second step would be to determine whether petitioners were disqualified under the labor dispute provision in *W.Va.Code,* 21A–6–3(4) (1978).

The factual setting in *Hill v. Board of Review,* 166 W.Va. 648, 276 S.E.2d 805 (1981) was much like the one presented herein. On July 26, 1976, roving pickets established a picket line at the mine where Hill and the other claimants were employed. Claimants refused to cross this picket line. On August 2 the pickets were not present, and the claimants returned to work for a short while. During their first shift at work, however, a fire damaged the switching panel and work was halted at the mine for six days. When the damage was repaired and the mine reopened, the roving pickets reappeared and claimants again refused to cross the picket line. In ruling Hill and his fellow claimants eligible for benefits for the period during which the mine was closed for repairs to the switching panel we stated:

"The existence of a possibility or probability that employees would not have reported to work had work been available and had pickets been present at the employer's premises is insufficient to support a finding that such employees were unavailable for work and therefore ineligible for unemployment compensation benefits, where the employees affirmatively show their willingness to accept available employment despite the existence of a labor dispute affecting other employers." Syllabus point 2, *Hill v. Board of Review, supra.*

In this case the board of review, *inter alia,* made the following findings of fact:

"The Board finds that claimants had ratified their contract prior to the strike of other crafts on June 1, 1979, and, further, that the claimants did not cross the picket line out of fear of the pickets. Also, it appears to the Board that claimants usual work would not have been available to them due to the support crafts being on strike.

The Board of Review believes claimants fall within the provisions of the Unemployment Compensation Statute 21A–6–3(4) in that they were not (1) participating, financing, or directly interested in such dispute ...; and further that work was not available to the claimants in that supporting crafts were striking which were needed to carry on their usual normal work assignments."

The board concluded "Therefore, the claimants are held to be eligible and not disqualified from receiving unemployment compensation benefits."

In Syllabus point 1 of *Kisamore v. Rutledge,* 166 W.Va. 675, 276 S.E.2d 821 (1981) (in part) we noted, "[f]indings of fact by the Board of Review of the West Virginia Department of Employment Security, in an unemployment compensation case, should not be set aside unless such findings are plainly wrong." The findings of fact by the board in the case *sub judice* are not plainly wrong, and should have been sus-

tained by the circuit court. On the facts as determined by the board, petitioners are clearly entitled to unemployment compensation benefits.

Accordingly, we reverse and remand with directions that the Circuit Court of Kanawha County enter an order affirming the decision of the board of review holding petitioners eligible and qualified for unemployment compensation benefits.

Reversed and Remanded.